(Decided 28th June, 1878.)

---

## George W. Smith *vs.* Peter L. Davis.

*Deeds—Fraud and Fraudulent Representations—Statement of Consideration in Deeds—Estoppel—Where Deed is impeached for Fraud in the Consideration, parol evidence admissible to prove real consideration—Guardian and Ward—Settlement of Accounts—Onus Probandi—Guardian generally bound to prove settlement just and fair—Under what circumstances the burden of proof in such cases is shifted to the Ward.*

Peter L. Davis was appointed guardian to Geo. W. Smith, a minor, and by the second guardian's account it appeared that the said Peter was indebted to the said George about $1700. Afterwards the ward requested his guar-

Smith *vs.* Davis.

dian to purchase for him a certain farm, and to apply whatever part of the said $1700 might be necessary to the payment thereof. The guardian made the desired purchase for his ward, and the deed conveying the said farm to the guardian stated the consideration at $1200. Afterwards the guardian conveyed the said farm to his ward, the deed conveying the same stating the consideration at $1700. After the ward had been in possession of the farm for several years, and had become of age, and had a settlement with the guardian, having executed to him a release, he filed a bill of complaint alleging that in the settlement with his guardian he had been deceived and defrauded by his guardian, and prayed that the release then executed might be cancelled and set aside, and that the guardian might be required to pay over to him the balance due, which he alleged to be $500, the same being the difference between the amount paid by his guardian for the farm purchased as aforesaid, and the amount which the said guardian had charged his ward therefor. The defendant denied all the charges of fraud and deceit and averred that though by lapse of time his memory failed to recall the precise amount paid by him for said farm, nevertheless that amount was carefully and accurately ascertained, and that the complainant paid *that amount* therefor and *no more ;* that the amount paid by the defendant for the said farm was paid by satisfying outstanding liens against the farm in the hands of its then owner, and the amount of said liens so paid by him was carefully ascertained and charged in his account against his ward, and the insertion of $1700 in the deed from him to his ward as the consideration was done at the suggestion of his attorney, because that amount corresponded with his indebtedness to his ward at the time of final settlement, and not because it was the amount actually paid by him for the said farm. That all those facts were known to the complainant at the time of the settlement, and the release was executed by him voluntarily and with full knowledge of these facts. To the evidence offered on the part of the defendant in proof of the facts set forth in the answer exceptions were filed by the complainant, on the ground that the considerations stated on the face of the deeds were conclusive, and could not be contradicted by parol evidence, and that such evidence was therefore incompetent and inadmissible. HELD :

1st. That the bill of complaint in this case charged that by false and fraudulent representations made by the appellee with respect to the cost of the land the complainant was induced to pay, and did pay, in the settlement of the guardian's account, the sum of $500 in excess of the amount payable under their contract; that the questions of fact to be determined were,—1st. How much did the appellee actually pay for the land ? and 2nd. How much was the real consideration paid therefor by the appellant; that in determin-

ing these questions the parties were not concluded by the amounts of consideration money stated in the deeds.

2nd. That the deeds were altogether collateral to the subject-matter of inquiry, were introduced as evidence only, and the parties were not estopped to show the real truth of the transaction by other evidence outside of the deeds.

3rd. That this was a case where a deed was impeached for fraud, and the party to whom the fraud was imputed might show the actual consideration, provided it be of the same kind as that stated in the deed, differing only in amount.

4th. That as a general rule it is incumbent upon the guardian to prove that the settlement with his ward is just and correct, but where the ward has for several years been emancipated from the influence and control of his former guardian, and where, owing to lapse of time, the vouchers and papers furnishing the elements that enter into the settlement have been lost or mislaid, and where the settlement appears to have been carefully made, and understood by the ward, and no objection was made thereto, but the guardian was voluntarily released by the ward, it would be inequitable to require the guardian to recast the account and show that the settlement was in all respects free from error.

APPEAL from the Circuit Court for Worcester County, in Equity.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., STEWART, BRENT, ALVEY and ROBINSON, J.

*W. H. W. Farrow,* for the appellant.

In the case at bar the appellee seeks to aver against his grantee by parol proof, that the amount of the consideration money expressed in the deed is not the true contract between them in this particular. In *Bladen vs. Wells and Wife,* 30 *Md.,* 581, we have it declared, that "no principle of law is more fairly established than that which excludes parol proof from being used, either at law or in equity, for the purpose of contradicting, adding to,

subtracting from or varying the terms of a deed, or controlling its legal operation and effect, except where it is impeached for fraud, or where it is sought to be reformed upon the allegation of fraud, accident or mistake," and that the deed is to be "treated as the exclusive medium of ascertaining the *agreement* by which the contracting parties bound themselves." It has been shown that the exception, "where the deed is impeached for fraud," does not reach this case, and it will not be contended that here it is sought to reform the deed upon the allegations of fraud, accident or mistake. But if proper proceedings had been had to correct this deed, so as to make it conform to the claim of the appellee, the relief could not have been had, because it requires the *most decisive proof*, and that is wanting here. If the proof was sufficiently decisive, still the relief would not have been granted, for the mistake alleged is not such as can be relieved against. The appellee claims that the consideration was made $1700 designedly, and the Court cannot interfere when the language is such as the parties designed it to be. *McElderry vs. Shipley*, 2 *Md.*, 25; *Showman vs. Miller*, 6 *Md.*, 479; *White & Tudor's Leading Cases in Equity*, *Vol. II*, 1014; *Kerr on Fraud and Mistake*, 428.

So without citations of the cases in Maryland to show their harmony with the case of *Bladen vs. Wells and Wife*, I assume that it sustains this appellant in his first exception to the evidence. In that case the opposing counsel argued against the exception, 1st, that the evidence was not repugnant to the deed; and 2nd, that the amount of consideration is only *prima facie* evidence. This Court decided both points against him. Upon this authority, I insist this appellee is concluded from averring to the contrary of his deed, and that it was not competent for the Court to consider the evidence in determining the case. Without it the appellee is confessedly without a defence. The case of *Carpenter vs. Buller*, 8 *Meeson & Wellsby*,

212, was urged below in behalf of the appellee, as an authority against the application of the doctrine of estoppel in this case. It was there contended that this case is within the rule laid down in *Carpenter vs. Buller;* that the action is wholly collateral to the deed, and so the appellee is not estopped by its *recital,* though it is evidence. The Circuit Court did not adopt this view, yet it will doubtless be urged in this Court, and will be met here. The case of *Carpenter vs. Buller* determines the force of a *recital* in an instrument, and is not applicable to any of the *terms* of the contract which the instrument makes. It expressly holds " by his *contract* in the *instrument* itself a party is assuredly bound, and must fulfill it. It is an authority to support the estoppel in this case, because the evidence is offered against an *averment* of the deed, and not a recital." 1 *Taylor's Evidence, secs.* 84, 85 and 86 quotes the case, and limits its application.

But the action here is not *collateral* to the deed. The suit is for the recovery of overpaid purchase money, obtained by the appellee through fraud. In *Bladen vs. Wells and Wife,* the bill was intended to reach purchase money not shown in the contract evidenced by deed ; and there the Court held the deed to be a conclusion against the relief. Here the appellant seeks to reach purchase money contained in the deed, and bases his suit on the deed. Certainly this is within the principal case. *Bigelow on Estoppel,* 286 *and* 287 ; *Wiles vs. Woodward,* 5 *Ex.,* 557 ; *Wesley vs. Thomas,* 6 *H. & J.,* 24 ; *Stockett vs. Watkins,* 6 *H. & J.,* 435 ; *Wolfe vs. Hauver,* 1 *Gill,* 87, 90 *and* 91 ; *Carr vs. Hobbs,* 11 *Md.,* 285 ; *Cunningham vs. Dwyer,* 23 *Md.,* 219.

The Court erred in this case in imposing the burden of proof of fraud upon the appellant.

The confidential relation of guardian and ward between the parties is admitted in the pleadings and the proof. It is set up as a defence that the appellee discharged his

obligations as such guardian by the transfer of this land and the sale of certain personal property to his ward, and for them received the deed of release, and the bill of $287 from his ward, and the proof shows the settling of these transactions occurred at the time of the settlement of the guardianship, when the ward was not yet twenty-two years old. These facts make the case, in the view of a Court of equity, one of *constructive fraud*, and impose the burden of proof upon the party occupying the relation of confidence to show the perfect fairness and equity of the transactions. 3 *Greenleaf Ev.*, sec. 253 ; 1 *Story's Equity*, sec. 317, &c.; *Kerr on Injunctions*, 46 ; *Kerr on Fraud and Mistake*, 177, 386.

Judge STORY, in the section just cited, speaking of guardian and ward, says : Courts of equity "will not permit transactions between guardian and ward to stand, even when they have occurred after the minority has ceased, and the relation become thereby actually ended, unless under circumstances demonstrating in the highest sense of the term deliberation and *uberrima fides.* For in all such cases the relation is *still considered* as having an undue influence upon the mind, and as virtually subsisting, especially if all the duties attached to the situation have not ceased, if the accounts between the parties have not been fully settled, and if the estate in some sort remains under the control of the guardian." These principles are fully recognized by this Court. *Ringgold vs. Ringgold*, 1 *H. & G.*, 11; *Brooks vs. Berry*, 2 *Gill*, 83 ; *Spalding vs. Brent*, 3 *Md. Ch.*, 415, 417 ; *Highberger, et al. vs. Stiffles*, 21 *Md.*, 353, 354; *Todd vs. Grove*, 33 *Md.*, 194, 195, 208.

The Court presumes the influence exerted from the relation of the parties. *Kerr on Fraud and Mistake*, 183, 151, 178 *and* 386; *White & Tudor's Leading Cases in Equity*, *Vol. II, part II, p.* 1212.

And as long as the accounts between them have not been fully settled, or the estate remains in some sort under

the control of the guardian, the influence will be presumed to exist. " The influence will indeed be presumed to exist until there is distinct evidence of its determination." *Kerr on Fraud and Mistake*, 178 ; *Story's Eq.*, sec. 317.

The release sought to be set aside is relied on as *prima facie* valid, and so to put the burden of proof of fraud on the appellant. In *Hill on Trusts*, *(marginal paging* 581,) the rule is laid down to be: "Where it, (a release,) is made by the party immediately on coming of age, the Court will *require satisfaction* that the trustee has taken no advantage of his influence acquired during the infancy of his *cestui que trust.*" In 3 *Greenleaf on Evidence, sec.* 253, it is stated, " that in equity, in taking an account of the pecuniary transactions between an attorney and his client, the production of a bond, given by the latter to the former, will not be deemed sufficient *prima facie* evidence of a debt to that amount, but the burden of proof will still be on the attorney to prove an actual payment of the entire consideration for which the bond was given," and that this rule applies to all confidential relations, guardians; &c.

These authorities show that the *release, per se,* does not repel the presumption of influence unduly used, and that it still further devolves upon the person holding the confidential position to *satisfy* the Court that he has taken no advantage of his position. And such was the view of the law taken by this Court in *Forbes vs. Forbes*, 5 *Gill*, 39 ; and in *McClellan and Wife vs. Kennedy*, 8 *Md.*, 249 ; and also by Ch. KILTY *in Crapster vs. Griffith*, 2 *Bland*, 7. In the first case the Court says: " No doubt a release executed by a ward, or *cestui que trust*, shortly after he attains age, without the necessary accounts or information from which a judgment may be formed of the condition of the estate, would not meet with the favor of a Court of equity." The inquiry *therefore will be*, whether the necessary information was imparted to the complainant, to enable him or his

advisers to form such judgment. And the case next cited from 8 *Md.*, 249, says : " It is true that settlements between guardian and ward recently after the office has terminated are not favored, because the influence may be supposed to continue ; but this fact alone *is not a fatal objection.* Why ? The influence which the Court presumes, and which makes such releases disfavored, may be shown by the trustee to be not present in the transaction, and the Court may by him be *satisfied* of its *uberrima fides.*" In the first of these cases, the Court was satisfied that complete information had been imparted to the advisers of the ward, and in the other, a voluntary release of an account long since correctly stated by the proper Court. In the case of *Forbes vs. Forbes*, the release set out on its face a transfer of property for which the release was executed. In the case at bar the release is based on *payment,* whilst the admission is that land and goods to that value were the real consideration of the release. This is a sufficient circumstance of itself to demand a complete showing from the guardian of the good faith of the transaction, and to put on him the burden of upholding his release, were the rule other than it is. *Kerr on Fraud and Mistake*, 192.

The release is based on sales made by the guardian to his ward. A sale made to the ward by the guardian stands on the same footing as a purchase by the guardian from his ward. *McCarty vs. Bee,* 1 *McCord's Chan. R.,* 383 ; *Hoffman S. C. Co. vs. Cumberland C. and I. Co.,* 16 *Md.,* 561.

*George W. Purnell,* for the appellee.

The doctrine of estoppel does not apply to that which is merely descriptive in the deed, and not an essential averment. A grantor in a deed could not deny the grant, or that he had a good title to the thing granted, but is not bound by the consideration expressed, because that is not

an essential averment. The deed is just as good without it as with it. And it is arbitrary, frequently different from that expressed in the deed. 1 *Greenleaf on Evid.*, sec. 26, and note 1 ; *Wilkinson vs. Scott*, 17 *Mass.*, 249 ; *Sheppard vs. Little*, 14 *Johnson's Rep.*, 210 ; *Bowen vs. Bell*, 20 *Johnson's Rep.*, 338 ; 3 *Wash. on Real Estate*, page 87, sec. 12.

The doctrine of estoppel does not apply where it would have a collateral effect. If the action were upon any contract contained in the deed, the party to it would be bound to fulfill it, but there is no authority to show that a party to the instrument would be estopped in an action by the other party not founded on the deed and wholly collateral to it. As between the parties to the instrument, and in an action upon it, it is not competent for the party to deny the recital, but it is evidence only when used collaterally, and is not conclusive. *Bigelow on Estoppel*, page 286 ; *Carpenter vs. Buller*, 8 *Mees. & W.*, 208 ; 3 *Wash. on Real Estate*, page 86, sec. I ; *Stewart vs. State*, 2 *H. & G.*, 114 ; *Parks vs. Parks*, 19 *Md.*, 323.

This suit was instituted to set aside a release on the ground of fraud, and for an account, and the deed is offered in evidence merely as evidence to show that the defendant in the settlement charged the complainant $1700.00 for the land. It is used collaterally.

The rule that parol evidence cannot be used for the purpose of contradicting, adding to, subtracting from or varying the terms of a written instrument, does not apply.

(1.) Because the evidence tends to show nothing inconsistent with the deed, neither contradicting, adding to, subtracting from, nor varying its terms. Parol evidence may be given of collateral and independent facts, which tend to support a deed, provided it is not offered to vary the agreement and is consistent with the deed. *Dorsey vs. Eagle*, 7 *G. & J.*, 331 ; *Bladen vs. Wells and Wife*, 30 *Md.*, 577. The evidence objected to consisted of collateral and independent facts, tending to support the deed and

consistent with it. It only explains what the consideration was. 1 *Greenleaf on Evid.*, sec. 23, note 2 ; *Cole vs. Albers & Range,* 1 *Gill,* 412. And goes to show that in the settlement, a full account of which has been prayed for by the bill, one of the items in favor of the complainant, (being the amount of the guardian account,) was made by agreement the consideration of the deed. It is entirely consistent with the terms of the deed. No effort has been made to show that the consideration was not $1700, on the contrary, it appears that the consideration was placed in the deed by design, the consent of all parties being had thereto  It may be evidence of the price agreed upon between the parties, but does not prevent the grantor from shówing what particular thing that price was.

This Court, in the case of *Bladen vs. Wells,* say, that no case has been found where the grantor has been allowed to aver, as against the grantee, that the amount of the consideration money expressed in the deed, as the price for the land thereby conveyed, is not the true contract between them. We understand this to extend to actions upon the contract for a price larger than that named in the deed, and only to actions upon the contract. That case is entirely different from the one now before the Court. The defendant claims that the consideration named is the true one, while the complainant sets up a different one by parol, and having done so, the defendant only claims the right to show why the difference exists by evidence consistent with the deed and in support of it.

(2.) Because the evidence tends to show how the consideration was paid. A recital of payment in the deed is *prima facie* evidence of it, and no more. If there be no recital of payment, the presumption is changed. In the deed referred to, there was no recital of payment. All of the evidence shows that a settlement was made between the complainant and defendant, and that this deed was an item in it. This suit has been instituted for the purpose

of opening up that settlement, and for an account, a full statement of which cannot be given if one of the parties should be prevented from showing how that settlement was made, including everything in and about it, fully and without stint. If the action were upon the deed, the grantee would be permitted to show that he had paid for the land in cash, or in stocks, or in land exchanged, or with his guardian account, as the case might be. The rule should not be broader for the grantee than the grantor, especially where the grantee has alleged fraud. The rule as laid down by the complainant would not only bind the defendant to the language of the deed, but would also make it appear beyond all contradiction that he had actually received the sum named in the deed. This is not so even when payment is recited. There was a settlement made between them as guardian and ward, from all the evidence bearing upon which it will appear that the defendant never did receive for the land anything more than what it did cost him, but in it one item was made the consideration of the deed. If the construction placed upon the rule by the complainant is the true one, why cannot the defendant recover from the complainant, in an action upon the deed, the difference between what he has actually received and the consideration named in the deed. He has shown that he never received seventeen hundred dollars, and could recover the difference, if the complainant couldn't show how he had paid it, and if the grantee could show how he paid, the grantor must be able to show how he was paid.

(3.) Because it is alleged that the acceptance of the deed by the complainant was procured by the fraud of the defendant. The complainant has alleged, that by a parol contract made in 1865, the defendant was to purchase the land for him, and let him have it at what it cost him, with compensation for his trouble; that the land did not cost $1700, but that in 1868, when the deed was drawn,

the defendant charged him $1700 for the land, and by fraudulent misrepresentations induced the complainant to accept the deed. The defendant admits that he sold the land to complainant at what it cost him, with compensation for his trouble, and that it did not cost $1700 ; and that when the deed was drawn, the consideration of $1700 was inserted in it, but denies the fraud, and denies that he purchased the land under an agreement with the complainant, and offers the evidence objected to, to show that there was no fraud, and to explain why the consideration of $1700 was placed in the deed. Such an allegation as the above named attacks the deed as effectually as if declared fraudulent by the bill and prayed to be made null and void. If a grantor allege that his deed was procured by the fraud of the grantee, will it be pretended that the grantee could not offer any fact, no matter how slight, bearing at all upon the point at issue, and not wholly irrelevant, to rebut the fraud. (*Davis vs. Calvert, et al.,* 5 *G. & J.,* 269 ; *Waters vs. Dashiel,* 1 *Md.,* 455 ; *Wesley vs. Thomas,* 6 *H. & J.,* 24 ; *Watkins vs. Stockett,* 6 *H. & J.,* 435 ; *Bladen vs. Wells and Wife,* 30 *Md.,* 577.)

If the grantee could offer such evidence to rebut fraud, there can be no good reason why a grantor should not, when it is alleged that the acceptance of the deed by the grantee was procured by the fraud of the grantor. When a deed is impeached for fraud, any consideration of the same kind as that stated in it, but different in amount, may be shown by the grantor to support it. (*Bladen vs. Wells and Wife,* 30 *Md.,* 577 ; *Betts vs. Union Bank,* 1 *H. & G.,* 172 ; *Cunningham vs. Dwyer,* 23 *Md.,* 219 ; *Cole vs. Albers & Range,* 1 *Gill,* 412 ) The acceptance of a deed is a part of it, as essential as the description of property in it, and is necessary to complete it. And if alleged that the acceptance of it was procured by fraud, the deed was attacked for fraud, and all evidence within reach of

31 v. 49.

the grantee should also be within reach of the grantor, when the case is reversed.

The second exception cannot be sustained, because the answer given was responsive.

The witness had given in chief evidence of the settlement between complainant and defendant, at the house of the latter. Upon cross-examination, he was asked, "Have you stated all that was said at that time about the land; did the price they talked of then correspond with the price you heard read from the deed?" Answer: "They talked about the price of the land, but I don't remember what it was, as it has been so long; I didn't take any account of it; I can't say, it was very near; there was some talk about some charges that were brought in to make the amount in the deed." The answer is responsive to either of the two clauses of the interrogatory above named, but when the interrogatory is taken as a whole, it is certainly responsive. The witness has a right to answer it as a whole, if he choses to do so. The inquiry was for all that was said, which would show whether or not the price talked of corresponded with the sum he had read in the deed, and the answer was such as would show that there was a difference.

The burden of proof is on complainant. The relations of the parties will not bring them within the rule which imposes the burden upon the guardian. The burden, as a rule, is on the affirmative of the issue, but in all transactions between the guardian and ward during the minority, or soon after the ward attains his majority, while the influence of the guardian still exists, Courts of equity watch the interests of the ward with jealous care, and impose the burden upon the guardian, subject, however, to the rule that the release makes a *prima facie* case in favor of the guardian. In this case it is clear that all influence had ceased to exist. The guardianship virtually ceased in 1865, three years before the settlement in 1868, when the

ward was within one month of twenty-two years of age, and in no way under the control of his former guardian. He was in possession of his lands, and had received from his guardian more than all his property, being in debt to him instead of being compelled to look to him for his means. He too had sought his guardian, which showed his independence and readiness to meet him in settlement. *Story's Eq. Jurisprudence, vol.* 1, *sect.* 318, *et seq.; White & Tudor's Leading Cases in Equity, vol.* 2, *page* 1112.

The release is *prima facie* valid and binding on the parties executing it. (*Hill on Trustees, marginal page* 582; *Kirby vs. Taylor,* 6 *Johnson's Chan. Rep.,* 242.) The complainant has alleged that the release was procured by fraud, and prays that it may be set aside. If the burden is on the defendant in such a case, the release means nothing.

The burden of proof being on complainant, he must show that the release was not freely and fairly obtained, but by fraud, misrepresentation or undue means. *Kirby vs. Taylor,* 6 *Johnson's Chan. Rep.,* 242.

A party defrauded, to successfully seek redress, must manifest his determination to do so within a reasonable time after the discovery of the fraud. *Clements vs. Smith's Adm'r,* 9 *Gill,* 156. The complainant was sued in July, 1873, on the note for $287, when he had all the information he has since had, which will appear from the testimony of Peter W. Dale. Judgment was rendered on the note in October, 1873, without a defence, and execution issued the following year, when the money was paid over, and afterwards, in October, the bill in this cause was filed. The longer action was put off, the more uncertain became the facts connected with the settlement, and the more certain that death would remove some of the witnesses to the transaction. The appellant was deprived of testimony by the delay. Memory is always defective where many items, charges and credits make up an account, and of

course gets worse as the settlement grows older. In this case the suit was instituted more than nine years after the contract was made, more than six years after the settlement, and as much as eighteen months after defendant had all his information. *Luken's Appeal,* 7 *W. & S.,* 48; *Bane's Appeal,* 3 *Casey,* 492; *Chorpenning's Appeal,* 8 *Casey,* 315; *White & Tudor, Leading Cases in Equity,* 1212–1213; *Story's Equity Juris., Vol. II, sec.* 1520 *to* 1522; *Vol. 1, sec.* 64 *a* and 529.

If the burden of proof should be on the defendant, the decree must be affirmed, because the main facts are testified to by disinterested witnesses, and the circumstances show that the release was freely and fairly obtained.

BARTOL, C. J , delivered the opinion of the Court.

The appellee was, on the 28th day of January, 1862, appointed by the Orphans' Court of Worcester County guardian of the appellant, then a minor, in the sixteenth year of his age.

By the second guardian account passed on the 17th day of January, 1865, it appears the guardian was indebted to his ward $1703.13, less the sum of $81.36 which had been expended out of the principal, in excess of the profits of the estate, leaving a balance due of $1621.77, with interest thereon from October 22nd, 1864.

The appellant and his elder brother, William L. Smith, each owned a farm contiguous to each other, which had been allotted to them in the division of their deceased father's real estate. William L. Smith being largely indebted, several judgments were rendered against him, between the 21st of April and the 16th of May, 1865, and writs of *fieri facias* were issued thereon, which were levied upon his farm and chattels. The appellant, then being about nineteen years of age, desired to become the owner of his brother's farm, on which was the family homestead and where the remains of their parents were buried. In

Smith *vs.* Davis.

May, 1865, this farm was purchased for him by the appellee, and he was then placed in possession thereof. He came of age in June, 1867, and on the 9th day of May, 1868, the farm was conveyed to him by the appellee and his wife. A settlement was then made between him and his guardian, and a release executed by him to the latter. At the settlement, he was found to be indebted to the appellee in the sum of $287.00 for which he gave his single bill. A suit was instituted by the appellee against the appellant upon the single bill, and on the 30th October, 1873, a judgment was recovered thereon, which was paid.

On the 24th day of October, 1874, the appellant filed the bill of complaint in this case, alleging that in the settlement made on the 9th day of May, 1868, he was deceived and defrauded by the appellee, and praying that the release then executed by him may be cancelled and set aside, and that the appellee may be required to pay the sum of money or balance due him which the bill alleges is $500, with interest from May 17th, 1865.

According to the averments in the bill of complaint, the alleged fraud charged against the appellee consisted in this, that the appellee agreed to buy the land of William L. Smith for the appellant, and to convey it to him at the same price it cost; but the bill alleges that the appellee purchased it for the sum of $1200, and that he falsely stated to the appellant it had cost $1700, and in the settlement of the guardian account the sum of $1700 was exacted and received from the appellant as the purchase money for the land.

The defendant denies all the charges of fraud and fraudulent misrepresentation, and avers that by reason of the great lapse of time he is unable to state with precision how much the land cost him; but that the actual cost of the land was ascertained, and the appellant, in the settlement, paid *that amount* and no more. That the price of the land was ascertained by E. K. Wilson, Esquire, an at-

torney selected for that purpose, who drew the deed and
release.   The answer avers that the settlement was fairly
made; and that the release was freely and voluntarily
executed by the appellant, with a full understanding of
all matters of account existing between them, which were
embraced in the settlement.

The deed from William L. Smith to the appellee, dated
May 17, 1865, purports to have been made for the consid-
eration of $1200.   The deed from the appellee and wife
to the appellant dated May 9th, 1868, states the considera-
tion therefor as $1700.

The proof on the part of the appellee shows that at the
time the former deed was executed, there existed judg-
ments and executions against William L. Smith, which
were paid by the appellee, and which constituted the actual
cost or price paid by him for the land.

With respect to the deed of May 9th, 1868, the proof on
the part of the appellee shows that the consideration of
$1700, stated therein, was inserted at the suggestion of
Mr. Wilson, as that amount nearly corresponded with the
apparent balance due on the guardian account, but did
not express the real consideration, or price paid by the
appellant for the land.   That this was ascertained by cal-
culating the amount of liens thereon, which had been paid
and satisfied by the appellee.

To this proof exceptions have been filed by the appellant,
on the ground that the same is incompetent and inadmissi-
ble.   He insists that the considerations stated on the face
of the deeds are conclusive, and cannot be contradicted
by parol evidence.

Upon the validity of these exceptions the case of the
appellant mainly depends.

The Circuit Court overruled these exceptions, for rea-
sons which we think are entirely satisfactory.   In sup-
port of the exceptions the appellant relies on *Bladen vs.
Wells*, 30 *Md.*, 577.   In that case the deed conveyed a

parcel of land containing about 230 acres (less 40 acres) for the consideration of $1300. The grantor instituted a suit in chancery to recover on an alleged parol agreement to the effect that if the land exceeded 140 acres the purchaser agreed to pay $10 in gold, or $20 in currency, at the vendor's option, per acre, for each acre above 130.

The parol evidence was held to be inadmissible. The Court said, " where the deed expresses the amount of the consideration money as the price of the land thereby conveyed, the grantor will not be allowed to aver that it is not the true contract of the parties in this particular ; nor will a parol contract be admitted to vary the deed in this respect."

The Court referred with approval to *Howes vs. Barker,* 3 *Johns. R.,* 506, also cited by the appellant. In that case it was held that the vendee could not maintain an action of assumpsit, to recover back part of the purchase money paid for land, upon an alleged parol agreement inconsistent with the terms of the contract evidenced by the deed. These decisions rest upon the familiar and well established rule, that where the contract of sale has been executed, by the delivery of a deed, the deed furnishes the best evidence of the contract, and the parties to the instrument will not be allowed, by parol evidence, to contradict or vary its terms *where fraud is not alleged,* or to set up a parol agreement of sale different from that expressed in the deed. Those cases are in no respect analogous to the present. Here the appellant seeks to avoid the effect of the release, and to recover money alleged to be due from the appellee, on the ground that the latter contracted to buy a farm for him, and to charge him no more than the price actually paid for it by the appellee ; and the bill alleges that by false and fraudulent representations made by the appellee, with respect to the cost of the land, the complainant was induced to pay, and did pay, in the settlement of the guardian account, the sum of $500, in ex-

cess of the amount payable under his contract. The questions of fact to be determined are *first*, how much did the appellee actually pay for the land ; and *secondly*, how much was the real consideration paid therefor by the appellant?

In determining these questions the parties are not concluded by the amounts of consideration money stated in the deeds. The deeds are altogether collateral to the subject-matter of inquiry. They are introduced as evidence only, and the parties are not estopped to show the real truth of the transaction by other evidence outside of the deeds. *Carpenter vs. Buller*, 8 *Mees. & W.*, 212.

But especially is this so in the present case. Here the ground of the suit is the alleged fraud of the appellee. To sustain the charge of fraud the deeds are offered in evidence, and the statement therein of the amount of consideration is relied on to establish the charge. In such case it is clear that to repel the charge of fraud the appellee is equitably entitled to prove the actual cost of the land to him, and the real consideration paid therefor by the appellant. It is well settled that where a deed is impeached for fraud, the party to whom the fraud is imputed may show the actual consideration paid, provided it be of the same kind as that stated in the deed, differing only in amount. *Betts vs. Union Bank*, 1 *H. & G.*, 189 ; *Cole vs. Albers, et al.*, 1 *Gill*, 412 ; *Wolf vs. Hauver*, 1 *Gill*, 84 ; *Carr and Wife vs. Hobbs*, 11 *Md.*, 285 ; *Cunningham vs. Dwyer*, 23 *Md.*, 219 ; *Bladen vs. Wells*, 30 *Md.*, 578.

There is no reason why this rule should not apply to the case before us. It would be most inequitable to deny to the appellee the right of repelling the charge of fraud by evidence showing the real nature of the transaction, and the elements that entered into the settlement of the 9th of May, 1868.

The evidence offered by the appellee being admissible, the next question to be considered is as to the facts established by the testimony. And first as to the burden of

proof. It has been argued by appellant's counsel, that the subject-matter of investigation being a settlement made by a guardian with his ward, a short time after the latter attained majority, " the *onus* of proof is on the appellee, to show every thing requisite to make the settlement valid and binding." This is no doubt the general rule ; it is so stated in *Hill on Trustees*, 526 *m*, who cites a great number of cases in Note 2 ; all of which we have examined. We refer also to *Hylton vs. Hylton*, 2 *Ves.*, 547 ; *Hatch vs. Hatch*, 9 *Ves.*, 292 ; *Kilbee vs. Sneyd*, 2 *Molloy's R.*, 230 ; *Walker vs. Symonds*, 3 *Swanst.*, 69 ; *Solkeld vs. Vernon*, 1 *Eden*, 67 *m*; *Wedderburn vs. Wedderburn*, 2 *Keene's R.*, 722 ; where the subject has been fully considered. As said by Ch. J., TILGHMAN in *Elliott vs. Elliott*, 5 *Binney*, 8 ; and in *Say's Ex'r vs. Barnes*, 4 *S. & R.*, 114 ; " The law looks with a jealous eye on settlements made by infants soon after their arrival at age, and before they are fully acquainted with their affairs." And in *Walker vs Symonds*, 3 *Swanst.*, 69, Lord ELDON adverts to the protection which the Court extends to infants, for a reasonable period after their coming of age, until they had acquired all the information which they might have had, if of adult years.

The rule above stated is based on considerations of public policy, to prevent fraud and imposition by guardians upon their wards, during their minority, or soon after their minority has ended ; while the influence of the guardian and the subjection of the ward may be supposed still to continue.

But the rule which imposes the burden on the guardian to furnish the *data*, and to prove that the settlement with his former ward was in all respects just and correct, has no application to this case, for several reasons.

In the first place, it appears from the proof that owing to the lapse of time the vouchers and papers showing the elements that entered into the settlement have been lost or mislaid, which circumstance has been considered in all

the cases as a sufficient reason for exempting the guardian from the obligation to furnish evidence to establish the correctness of the settlement. In the next place, the proof shows that the ward had been virtually emancipated from the government and control of his guardian as early as May, 1865, when he was about nineteen years of age. At that time he went into the possession of the farm purchased for him by the appellee. When he was nearly twenty-two years of age, the settlement was made and his release executed. The state of his account with his former guardian was very simple, and perfectly understood by him.

To carry out the contract between them, with respect to the farm, it was simply necessary to ascertain the amount of liens thereon which had been paid by the appellee, and which determined the cost thereof to the latter, and the price to be paid therefor by the appellant. For this purpose the parties had the assistance of an able attorney, by whom the estimate was made and the deed and release prepared. There remained other matters of account to be settled between them, consisting of charges for board bills paid by the appellee, for articles furnished to the appellant, and articles purchased for him at the constable's sale of his brother's chattels on the farm.

This account, it appears by the proof, was completed and settled by the parties on the 9th day of May, 1868, at the house of the appellee.

At this settlement three witnesses were present, Elisha H. Davis, and Peter L. Davis, Jr., sons of the appellee, and Henry A. Smyth, Esq., a justice of the peace, before whom the deed of that date was acknowledged, and who was the attesting witness to the release, and to the single bill for $287, then given by the appellant, before referred to. Henry A. Smyth, Esq. is dead; but the other two witnesses testify to the deliberation and care with which the settlement was made; Elisha assisted in making the calcula-

tions, states some of the items which were taken into the account, and both these witnesses state that Squire Smyth went over the calculations, and found no mistake in them. Books of account and papers were produced and examined, which have since been mislaid, or lost.

Under these circumstances it would be inequitable to hold the appellee bound to recast the account, or to impose on him the burden of proving that the settlement was in all respects free from error. Especially after the lapse of more than six years after the settlement was made.

In disposing of the case we do not consider it necessary to enter into a statement of the several items of account between the parties, as disclosed by the evidence. It would be impossible now, with the imperfect *data* before us, to state the account with any degree of accuracy. The counsel on each side have attempted this, but their statements are in many respects speculative and conjectural, and of course differ widely in their results. This is not strange when we consider that many of the papers and memoranda have been lost; one of the witnesses to the transaction is dead, and the memory of those who survive, after the lapse of eight years, has naturally become dim and imperfect. We may add, that after a careful examination of the testimony, we have not discovered any material error in the settlement. This appears to have been carefully and deliberately made, and the release was executed voluntarily, when the appellant was of full age, and acquainted with his affairs.

Under these circumstances, the *onus* of proof is on the appellant to show some mistake or error in the settlement, or that some fraud had been practised on him by his guardian. This has not been shown by the evidence, and the decree of the Circuit Court will therefore be affirmed.

*Decree affirmed.*

(Decided 23rd July, 1878.)