# ALBERT M. HIEATZMAN

*vs.*

# ALFRED H. BRAECKLEIN.

*Assignments of stocks: considerations; parol evidence.*

Where a written assignment of the stock of a corporation states it to be in consideration of the sum of one dollar and other good and valuable considerations, it has the character of a bargain and sale.                              p. 488

In such a case parol evidence is admissible not only to show the real money consideration of the assignment, but to show that the same had not been paid.                    pp. 485-486

Parol evidence is also admissible to show what was meant by other good and valuable considerations and of what the considerations actually consisted.                    p. 486

Such evidence does not vary or contradict the consideration of the assignment, nor does it set up any consideration inconsistent therewith.                              p. 486

But such evidence may be taken as relating to independent collateral matters of which the contract is silent.     p. 486

*Decided December 12th, 1917.*

Appeal from the Circuit Court of Baltimore City. (DAWKINS, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER and CONSTABLE, JJ.

*Jacob S. New* and *Julius H. Wyman* (with whom was *James T. O'Neill* on the brief), for the appellant.

*Duncan K. Brent* and *D. G. McIntosh, Jr.*, for the appellee.

PATTISON, J., delivered the opinion of the Court.

The appellee, the patentee of an improved device for sealing bottles, in December, 1915, assigned unto the appellant an undivided one-tenth part of all his right, title and interest in the patent.

In the month of February following, a company, with a capital stock of two hundred and fifty thousand dollars ($250,000), divided into twenty-five thousand (25,000) shares, each share of the par value of ten dollars ($10), was incorporated for the manufacture and sale of the patented article, and the appellant and all others to whom the appellee had assigned an interest in said patent, re-assigned their respective interests to him. Whereupon he, as the holder of the entire interest in the patent, assigned the same to the newly incorporated company, for which the company issued to him fifty-one per cent. (51%) of all its capital stock, or twelve thousand seven hundred and fifty (12,750) shares.

The appellee, on the day that he received it, surrendered the certificate for said stock to the corporation and caused certificates to be issued to each of those to whom he had assigned a part interest in the patent, including the appellant, for such proportionate part of the stock issued to him as they, under their respective assignments, held in the patent. As he had assigned to the appellant a one-tenth part of his interest in the patent, there was issued to the appellant, upon the books of the corporation, though never delivered to him, a certificate for one-tenth of the stock issued to the appellee, or twelve hundred and seventy-five (1,275) shares.

The appellee contends that the stock issued to the appellant is properly withheld from him, and, as he prays in his bill, should be cancelled, because of the appellant's failure to

comply with the terms of the agreement between them in respect to the assignment to him, and upon which his right to have the stock delivered to him depended.

The bill alleges that the appellant, defendant below, informed the appellee, plaintiff below, "that he was acquainted with a number of influential persons of means whom he could induce to invest sums aggregating not less than thirty thousand dollars ($30,000) in the capital stock of the company about to be formed, and agreed with the plaintiff that if a one-tenth interest in said patent rights were assigned to him, he would pay to the plaintiff the sum of one thousand dollars ($1,000) and would re-assign said one-tenth interest to the plaintiff, upon the formation of said company and accept, in lieu thereof, a certificate of stock in the company about to be formed, for a number of shares equal to one-tenth of the number of shares to be issued to the plaintiff in payment of said letter patent, and that said certificate should be held in escrow by the officers of said company, upon the express condition that said defendant, Hieatzman, pay to the plaintiff the sum of one thousand dollars ($1,000) and sell within a period not exceeding ninety (90) days from the date of said certificate, not less than thirty thousand dollars ($30,000) worth of the treasury stock of said company."

The bill further alleges that pursuant to the aforegoing agreement the plaintiff assigned to the defendant an undivided tenth interest in the patent, and that although more than ninety (90) days have elapsed since the date of the certificate of stock issued as aforesaid to the defendant, he has failed to pay any part of the sum of one thousand dollars ($1,000), agreed to be paid by him, or to sell under said agreement any part of the thirty thousand dollars ($30,000) worth of stock of the company, and prayed that the stock issued to the appellant on the books of the company be declared null and void, and that the corporation be directed to cancel said stock and to issue to the appellee a certificate of stock for an amount equal to the same.

The defendant in his answer denies that he agreed to sell any stated amount of stock of the company or to pay to the plaintiff the sum of one thousand dollars ($1,000) in consideration of the assignment to him of a one-tenth interest in the patent, but avers that such interest in the patent "was transferred to him because he was directly instrumental in procuring a number of influential persons who, through his efforts, became interested and advanced large sums of money for the purpose of starting the business of the incorporated company and this one-tenth interest in the patent, was surrendered by him for twelve hundred and seventy-five (1,275) shares of stock, which was not placed in escrow, but was put in a pool for the purpose of creating a voting trust as per agreement," a copy of the agreement was made part of the answer.

In the course of the trial oral testimony was admitted, over the objections of the defendant, to prove the allegations of the bill as to the consideration of the assignment from the plaintiff to the defendant, and the agreement of the parties that upon the formation of a corporation the interest so assigned should be re-assigned to the plaintiff and stock of the company issued, in lieu thereof, to the defendant, be held in escrow by the officers of the company awaiting the payment and performance of the consideration within the time limited by the agreement.

To the admission of this testimony the defendant excepted; the ground of his objection being that such oral evidence varied and contradicted the terms and provisions of the written assignment.

The consideration set out in the assignment is "the sum of one dollar to me in hand paid, the receipt of which is hereby acknowledged, and other good and valuable considerations." These considerations gave to the written assignment the character of bargain and sale (*Cunningham* v. *Dwyer,* 23 Md. 219; *Sewell* v. *Baxter,* 2 Md. Ch. 454; *Ellinger* v. *Crowl,* 17 Md. 374), and parole evidence was admissible not only to show the real monied consideration of the assignment but to

show that the same had not been paid.   Oral or parole evidence was also admissible to show what was meant by "other good and valuable considerations" or of what these considerations actually consisted, inasmuch as they are not expressly stated in the assignment.   The evidence admitted does not vary or contradict the consideration of the assignment, nor does it set up any new considerations inconsistent with the one therein stated.   *Cunningham* v. *Dwyer, supra; Sewell* v. *Baxter, supra; Cole* v. *Albers,* 1 G. 412; *Betts* v. *Union Bank,* 1 Harris & Gill, 175; *Smith* v. *Davis,* 49 Md. 470; *Thompson* v. *Corrie,* 57 Md. 197; *Mayfield* v. *Kilgour,* 31 Md. 240; *Koogle* v. *Cline,* 110 Md. 587; see also notes to *Sheby* v. *Cunnington,* 25 L. R. A. (N. S.) 1194.

The admission of evidence as to the alleged agreement providing for the re-assignment of defendant's interest in the patent upon the formation of a corporation, and the issuance to him of a designated part of its stock, in lieu thereof, subject to the terms and provisions of said agreement, is not in violation of the rules above mentioned, for such evidence relates to independent collateral matters of which the written assignment is silent.   *Fusting* v. *Sullivan,* 41 Md. 169; *Stallings* v. *Gottschalk,* 77 Md. 433.

An exception was also taken to the ruling of the Court in not permitting a witness offered by the defendant to answer the question "if the plaintiff had said, in a conversation with him, anything about his having any claim on defendant's stock."   Had he been permitted to answer this question and had said that the plaintiff had not referred to or set up any claim to this stock, the answer would have been entitled to no weight in refuting the allegations of defendant's bill, and we therefore find no error upon the ruling of the Court in this exception.

The Court below, after hearing much testimony, reached the conclusion that the plaintiff had established his right to the relief sought and passed its order declaring the stock issued to defendant upon the books of the company to be null and void, and directed the corporation to issue to the

plaintiff a certificate for the amount of stock so declared to be null and void. It is from that order that this appeal is taken.

The evidence of the plaintiff and his wife substantially support the material allegations of the bill, and in respect to the claim of the defendant, that the consideration for the interest in the patent assigned to him was the procurement by him of "a number of influential persons who through his efforts became interested and advanced large sums of money for the purpose of starting the business" of the proposed corporation, the plaintiff testified that at the time of the assignment to the defendant he had sold only a tenth interest in the patent, for which he had received the sum of three thousand dollars ($3,000.00) ; that subsequent to the assignment the defendant called upon him for commissions to which he claimed to be entitled upon sales made to such time, including the sale made prior to the assignment, the amount of commissions claimed by him being two hundred and fifty dollars ($250). The plaintiff paid him this amount, although as he states in his testimony he did not think him entitled to all of it, as he did not regard him as the procuring cause in some sales upon which he had claimed commission, nevertheless, he paid him therefor the amount of commissions claimed by him. Thereafter the defendant sold one hundred dollars ($100), and no more, of the stock of the company; for this sale he was paid by the company his commissions.

The said payment to him of two hundred and fifty dollars ($250) as commission was denied by the defendant, but as to the fact of its payment the wife of the plaintiff testified that on the occasion the money was said to have been paid to him she was asked by her husband, the plaintiff, to get from his safe two hundred and fifty dollars ($250), which she did, and when she handed it to her husband he gave it to the defendant in her presence, saying at the time, that it was commission on the sales of interest in the patent claimed to have been made by the defendant to that time. It is also

in evidence that he loaned him on one occasion the sum of thirty-five dollars ($35), and at another time paid for him the sum of thirty-two dollars and ninety cents ($32.90) for a suit of clothes purchased by the defendant and sent to the home of the plaintiff, neither of these amounts has ever been repaid to the plaintiff.

Charles J. Meister, one of the purchasers of the patent and subsequently a director in the company and one of those for whose purchase of interest in the patent the defendant was paid a commission, testified that he was told by the defendant that he, the defendant, was to pay for the interest in the patent assigned to him one thousand dollars ($1,000), in cash, and was to sell thirty thousand dollars ($30,000) worth of the stock of the company.

Similar admissions were made by the defendant to others interested in the formation and operation of the incorporated company.

It is true the defendant in his testimony denied the consideration of the assignment of the interest in the patent to him and the agreement in relation thereto, set up by the plaintiff, and contradicted him and his witnesses in many other material allegations of the bill, but without further stating the evidence and discussing the weight and effect of the same, we will state that we agree with the learned Judge below in the conclusion reached by him, that the material allegations of the plaintiff's bill are sufficiently established by the evidence offered to entitle him to the relief sought. We will therefore affirm the decree.

*Decree affirmed, with costs to the appellee.*