[Civ. No. 11888.   First Dist., Div. One.   Apr. 29, 1942.]

HOMER H. TOOLEY, as Executor, etc., Appellant, v. JOHN PARKER et al., Respondents.

Byron Coleman, Carl E. Day, Abraham Setzer, Linforth, Cannon & Miller, Harold O. Mundhenk and Robert E. Hatch for Appellant.

Lillick, Geary, Olson & Charles, Ira S. Lillick, Kent A. Sawyer, Gilbert C. Wheat and Harry L. Haehl, Jr., for Respondents.

PETERS, P. J.—Plaintiff, as executor of the will of Carrie M. Botts, brought this action to recover 617½ shares of the stock of American Marine Paint Company alleged to be in the possession of defendant Parker. At the date of the death of Mrs. Botts this stock was in the possession of a San Francisco bank, and shortly thereafter the bank delivered the stock to Parker in accordance with written escrow instructions given by Mrs. Botts to the effect that the stock should be delivered to Parker in the event she predeceased him. Parker and the paint company are named as defendants. From a judgment for defendants plaintiff prosecutes this appeal.

The stock in question was delivered to the bank by Mrs. Botts with instructions to deliver it to Parker, subject to certain limitations hereafter discussed, pursuant to a written agreement dated December 14, 1934, between Mrs. Botts and Parker. Appellant contends that this agreement was without consideration, and, further, that it was ineffective as a gift. The trial court found that the contract of December 14, 1934, was supported by a valid consideration, and that the delivery by the bank to Parker was pursuant to that contract.

In order to secure a proper perspective of the present controversy, reference must be made to its background. James M. Botts and his wife Carrie M. Botts organized the American Marine Paint Company in 1903. The company prospered. James M. Botts died in 1934, and at that time he and his wife owned practically all of the stock in the company. By his will James M. Botts bequeathed to his wife her community interest in his estate; to R. Stanley Dollar $20,000; to defendant Parker 20 per cent of the stock of the American Marine Paint Company standing in his name at the time of his death; to his brothers and sisters the residue.

At the time Botts died, 1,953 shares of the stock of the company out of a total of 1,980 shares outstanding stood in the names of Botts and his wife as joint tenants. The estate was heavily indebted. If the shares were in fact held in joint

tenancy, it meant that the creditors of Botts, and legatees Dollar and Parker, and the others named would get nothing. If the shares were in fact held as community property, then the creditors of Botts would be paid, and Dollar and Parker and the other legatees would receive their respective legacies. Shortly after the death of Botts the question arose as to whether the stock was held in joint tenancy or as community property. The stock was first treated by the executor of Botts as joint tenancy stock. It was not listed in the first inventory of Botts' estate, in which were listed assets valued at but $1,969.92.

Prior to 1933 over 1,700 shares of the stock were in Mr. Botts' name and a little over 200 shares in the name of Mrs. Botts. In that year the stock was placed in the names of Mr. and Mrs. Botts as joint tenants. The new certificates issued in joint tenancy (with the exception of one certificate which was pledged with a bank) were not removed from the stock certificate book, and only one of the old certificates for which the joint tenancy stock was issued had been endorsed. The creditors and heirs of Botts contended that the stock was community property. Litigation was threatened over the issue.

Under these circumstances Mrs. Botts decided to compromise the controversy. She was very anxious to retain control of the company. If she contested the issue as to whether the stock was held in joint tenancy or as community property, and that contest resulted in a determination that it was held as community property and so part of Botts' estate, the stock would be largely consumed in paying creditors of Botts and the Dollar and Parker legacies, and Mrs. Botts would lose the controlling interest in the company. In order that she might retain the controlling interest, she worked out separate deals with the creditors and heirs of Botts, with legatee Dollar and with defendant Parker. She ultimately permitted the stock to be inventoried in the estate of Botts as community property. This resulted in the estate being appraised at over $206,000. She borrowed large sums of money from the corporation with which some of the creditors were paid and their claims assigned to her. To other creditors she gave promissory notes. To legatee Dollar, executor of her husband's estate and a legatee to the extent of $20,000, she gave her promissory note for $20,000, and received from him an assignment of his legacy and fees as executor. With Parker she worked

out the agreement that is the basis of this present action. She lived up to the letter and spirit of her various agreements until the time of her death on January 20, 1938. Her estate is also heavily involved. The plaintiff, the executor of her estate, has challenged the various agreements made by Mrs. Botts. He contends that all the agreements were unsupported by consideration, mainly on the ground that the stock was in fact joint tenancy stock. This position taken by the executor has led to considerable litigation, two phases of which have been heretofore before the appellate courts. Legatee Dollar sued Mrs. Botts' executor to recover on his note. In that action, as in the present one, it was contended that Mrs. Botts' obligation was without consideration, on the theory that the stock was in fact joint tenancy stock. This court held that the transaction was supported by consideration, and affirmed a judgment in favor of Dollar. (*Dollar* v. *Tooley,* 46 Cal. App. (2d) 832 [117 P. (2d) 39].) Several of the creditors who had received promissory notes from Mrs. Botts also sued her executor. There too the executor urged lack of consideration, which contention was again rejected, and judgments in favor of the creditors were affirmed. (*Lorber* v. *Tooley,* 47 Cal. App. (2d) 47 [117 P. (2d) 421].)

The present action grows out of transactions between Mrs. Botts and defendant Parker which were part of this general scheme for working out a solution of the problems connected with Mr. Botts' estate. Parker had been bequeathed 20 per cent of the stock of the paint company standing in the name of Botts at the time of his death. If the stock was held in joint tenancy the legacy would fail. The only way that Parker could receive his legacy would be if the stock were held to be community property. Parker made no claim against Mrs. Botts or against Mr. Botts' estate, but it is obvious that, so far as the legacy was concerned, his interests were adverse to Mrs. Botts. Both Mr. and Mrs. Botts had many times promised Parker that he would receive 20 per cent of the stock. From 1925 on Parker had been general manager of the paint company, and, after Mr. Botts' death, he became president. For many years he had been in complete charge of the company. His relations with Mr. and Mrs. Botts were most cordial and friendly, and continued so until their deaths. Mrs. Botts was desirous of carrying out the terms of her husband's will so far as Parker was concerned, and was also

very desirous of keeping Parker in the employ of the company during her lifetime. Under these circumstances, she consulted the firm of attorneys who had represented the paint company and Mr. and Mrs. Botts for many years. Her attorneys drafted the agreement of December 14, 1934, and Parker was unrepresented by counsel. The agreement recites that Parker is a legatee under the will of Mr. Botts of 20 per cent of the stock standing in the name of Mr. Botts at the time of his death; that Parker has rendered valuable services to the corporation which have benefited Mrs. Botts; that Mrs. Botts is indebted to the paint company in various sums, and, under date of July 30, 1934, entered into an agreement with the company pursuant to which Mrs. Botts may transfer to the company stock of the paint company owned by her and the issued and outstanding stock may thus be reduced; that both parties desire to effectuate the provisions of Mr. Botts' will so far as Parker is concerned; that in "consideration of these premises and of the respective sums of Ten Dollars ($10.00) paid by each of the parties hereto to the other, and of other valuable considerations received by each of the parties hereto from the other" it is agreed that:

Mrs. Botts shall transfer to Parker a number of shares of the stock of the paint company equal to 20 per cent of the present issued and outstanding shares of the company, when legally able; that if Mrs. Botts conveyed or hypothecated shares to the company pursuant to her agreement with that company, Parker agrees to contribute 20 per cent of the stock so conveyed or hypothecated. This provision was intended to permit Mrs. Botts, apparently at the option of the corporation, to pay her debt to the company, incurred for the purpose of raising money to pay Mr. Botts' creditors, with stock, and required Parker to contribute from his 20 per cent a proportional amount of the stock so used. The provision which more particularly gives rise to this action reads as follows: "Upon the death of the First Party [Mrs. Botts], the Second Party [Mr. Parker] (if he be living at said time, and if he be not so living, the then survivors of the wife and children of the Second Party, in equal shares), shall be entitled to receive out of the shares of stock of said American Marine Paint Company owned by the First Party as many shares of said stock as, added to the shares of the capital stock of said corporation which may be owned by the Second Party (or by his above mentioned heirs if the Second Party shall have

predeceased the First Party) at said time, shall equal an aggregate of fifty-one per cent (51%) of the then issued and outstanding capital stock of said corporation, it being the intent and purpose of this clause of this agreement that upon the death of the First Party, the Second Party (or his above mentioned heirs, as the case may be) shall have the controlling interest in said American Marine Paint Company.''

Thus, upon the death of Mrs. Botts, Parker, or his wife and children if he predeceased Mrs. Botts, was to be entitled to receive stock of the company which would be sufficient with the stock he owned to constitute 51 per cent of the then outstanding stock of the company. To carry out this purpose the agreement provided that, when Mrs. Botts was legally entitled to do so, she should endorse and deposit in escrow a number of shares which would be sufficient with the shares then owned by Parker to equal 51 per cent of the then issued and outstanding stock. Thereafter, if further stock of the company was issued, additional shares were to be deposited in the escrow to maintain the 51 per cent percentage. During her lifetime Mrs. Botts was to have the right to receive all dividends and to enjoy voting powers and other benefits incident to the ownership of the shares deposited in the escrow.

It was further provided that, upon the death of Mrs. Botts, the escrow holder should deliver the certificates to Parker, if he was then living, or, if he had predeceased Mrs. Botts, the stock was to be delivered to Parker's wife and children. But if Parker and his wife and children all predeceased Mrs. Botts, the shares of stock in the escrow were to be returned to Mrs. Botts. It was also provided that Parker, ''or his said heirs, as the case may be, shall have a present vested interest therein and in the ownership thereof which shall mature upon the death of the First Party [Mrs. Botts], but which shall terminate upon the death of the Second Party [Parker] and all his said heirs leaving the First Party [Mrs. Botts] surviving them.''

The endorsement to be placed on the stock deposited in the escrow, as provided for in the agreement, was to be as follows: ''The capital stock represented by this certificate is hereby endorsed, transferred, set over and assigned to John Parker (or to his wife and children, if he shall predecease the undersigned) as of the date of death of the undersigned.

In the event that John Parker and his wife and children predecease the undersigned, said stock shall then revert to the undersigned free of all claims and demands.''

The agreement also provided as to the 20 per cent of stock which Parker was to receive that he should be without right to sell or hypothecate it without first giving Mrs. Botts an opportunity to meet any offer he had from any other person.

Upon the trial, over objection of appellant that it violated the parol evidence rule, Parker testified that the ''other valuable considerations'' received by Mrs. Botts, and referred to in the contract were his oral promises to remain with the company throughout Mrs. Botts' life, and not to interfere with whatever course she chose to pursue in regard to the stock standing in Mr. and Mrs. Botts' names as joint tenants in connection with the probate of Mr. Botts' estate.

As already pointed out, the so-called joint tenancy stock was thereafter inventoried in the estate of Mr. Botts as community property. The stock was subsequently distributed to Mrs. Botts, except for 20 per cent distributed to Parker. The decree of distribution was entered on August 4, 1936. On November 30, 1937, Mrs. Botts deposited 617½ shares of the stock in escrow with the Crocker First National Bank in performance of her agreements contained in the instrument of December 14, 1934. She instructed the bank, upon receipt of notice of her death, to deliver the stock to Parker, if living, or, if he had died first, in equal shares to his wife and children. In the event Parker, his wife and children all predeceased her, on the death of the last survivor the stock was directed to be returned to Mrs. Botts. The directions were to apply to any additional shares which Mrs. Botts might deposit in the escrow. This provision arose from the agreement that if the number of shares outstanding should be increased Mrs. Botts should deposit sufficient to maintain the figure of 51 per cent.

In her will, executed in 1937, Mrs. Botts recognized her agreement with Parker. She made a bequest of her stock in the company, subject to her agreement with Parker. After her death the bank delivered the stock to Parker in accord with directions of the escrow.

It thus appears that Mrs. Botts at all times sought to, and did, abide by her agreement with Parker. There is no contention that Mrs. Botts ever expressed any dissatisfaction with that agreement. The case is not one where there is any

doubt of intention. The question is whether Mrs. Botts' intention to carry out the agreement must fail because not accomplished in the way the law prescribes.

In this action appellant seeks to recover the 31 per cent of the stock thus delivered to Parker. No contention is made that Parker does not own the 20 per cent of the stock. Appellant contends that, as to the 31 per cent of the stock, the agreement of December 14, 1934, cannot be upheld as a contract because such contract is without consideration; that it cannot be upheld as a gift because Mrs. Botts retained the right to the return of the stock if Parker, his wife and children should all predecease her. Parker takes issue with both these major contentions. The trial court held that the agreement of December 14, 1934, was supported by consideration.

We do not find it necessary to decide whether, if there were not a valid contract, the transaction could be upheld as a valid gift. It is our conclusion that, as held by the trial court, the agreement of December 14, 1934, was amply supported by consideration.

The stock was placed in escrow pursuant to the agreement of December 14, 1934, and delivered to Parker pursuant to that escrow.

In determining whether there was a valid consideration for that agreement, it is essential to keep in mind that at the time that agreement was entered into there was a serious and debatable question as to whether the stock of the paint company was held by Mrs. Botts as the survivor of a joint tenancy, or whether it was community property. Some of the heirs of Mr. Botts had retained counsel who advised them the stock was community property. In *Dollar* v. *Tooley, supra,* this controversy is referred to as presenting a "serious question," and it is pointed out that legatee Dollar, who was executor of Mr. Botts' estate, had been informed by counsel that the stock was not held in joint tenancy. Appellant seeks to minimize the existence of these doubts concerning the status of the stock, and apparently contends that, as a matter of law, the stock was joint tenancy stock. Appellant also points out that Parker never assumed a position of hostility towards Mrs. Botts on this issue by claiming the stock was community property. While it is true that Parker, who was very friendly with the Botts family, never quarreled with Mrs. Botts over the issue, he knew of the controversy, and he knew that his

rights would be determined at the same time that the rights of other claimants were determined. Mrs. Botts had no doubt that there was a bona fide dispute over the status of this stock. Her attorney at that time, who had been her attorney and the company's attorney for many years, knew of the controversy and so testified. As already pointed out, Mrs. Botts knew her continued control of the company was at stake. Under these circumstances, after consultation with her attorney, she made the offer to Parker which was accepted by him. By the contract thus consummated Mrs. Botts agreed that as soon as she was legally able she would transfer 20 per cent of the stock to Parker. That was all that Parker would be entitled to if it should be held that the stock was community property. Mrs. Botts also agreed that, upon her death, subject to certain contingencies, Parker should receive an additional 31 per cent. If it be assumed that these two provisions are severable, and that a separate consideration is required to support the promise as to this 31 per cent, there is ample consideration to support that promise. Parker agreed that, if Mrs. Botts should hypothecate or convey shares of stock to the company to apply to her indebtedness to the company, he would contribute 20 per cent of the stock she turned in to the corporation for that purpose. Obviously, if Parker had received the 20 per cent of the stock under the will he would have received it free and clear of any claims of Mrs. Botts. By this agreement he agreed to permit Mrs. Botts to use a portion of his stock to secure her indebtedness, and if the company reduced the number of outstanding shares he agreed to take a proportional reduction. Such agreement was clearly a legal and actual benefit to the promisee, Mrs. Botts, and a legal and actual detriment to the promisor, Parker. As such, it clearly comes within the statutory and common law definitions of consideration. (§ 1605, Civ. Code.) Parker also agreed that in the event that he should desire to sell the stock Mrs. Botts should have the first right to purchase. Parker's acceptance of the 20 per cent of the stock subject to these restrictions clearly constituted consideration for Mrs. Botts' promises in reference to the 31 per cent.

It is elementary law, and hardly requires citation of authority, that where there is a bona fide dispute, and the parties compromise their difficulties, the mutual promises of the parties constitute a valid consideration for the compromise, whatever the merits of that controversy may be. (See cases col-

lected 15 C.J.S., p. 728, § 11, et seq.) Here such a bona fide controversy existed, as to the 20 per cent of the stock. That dispute was settled and Mrs. Botts agreed to give an additional amount of stock if Parker would agree to certain restrictions on his stock. To these he agreed.

The considerations heretofore mentioned were set forth in the written agreement of the parties. These considerations, plus the presumption of consideration growing out of the fact the contract was in writing (§ 1614, Civ. Code) amply support the promises made by Mrs. Botts.

This determination makes it unnecessary to pass upon respondents' contentions that if the above considerations are insufficient, sufficient consideration is to be found in Parker's testimony that the "other valuable considerations" referred to in the contract were two in number: 1. His oral promise to remain with the company during Mrs. Botts' life; and (2) his oral promise not to interfere with whatever steps Mrs. Botts might take with regard to the stock in the probate of her husband's estate. Appellant contends that to permit such evidence of oral promises violates the parol evidence rule. Respondents urge that since the contract itself referred to "other valuable considerations" parol evidence is permissible to explain the meaning of the phrase. This is certainly the law in other states. (*Hieatzman* v. *Braecklein,* 131 Md. 485 [102 Atl. 917] ; *Frame* v. *Attermeier,* 147 Wis. 485 [133 N. W. 603] ; *Wright* v. *Stewart,* 19 Wash. 179 [52 Pac. 1020].) In view of the fact that the considerations set forth in the agreement itself are ample to support the contract, no reliance need be placed on the oral promises.

For the foregoing reasons the judgment appealed from is affirmed.

Knight, J., and Ward, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 25, 1942.