[Civ. No. 11626. First Dist., Div. Two. Sept. 30, 1941.]

H. M. LORBER, Respondent, v. HOMER H. TOOLEY, as Executor, etc., Appellant.

R. STANLEY DOLLAR, Respondent, v. HOMER H. TOOLEY, as Executor, etc., Appellant.

ROBERT DOLLAR II et al., as Executors, etc., Respondents, v. HOMER H. TOOLEY, as Executor, etc., Appellant.

48

Byron Coleman, Abraham Setzer, Carl E. Day, George C. Hadley and Robert E. Hatch for Appellant.

Keith R. Ferguson, Robert E. Burns and Brobeck, Phleger & Harrison for Respondents.

STURTEVANT, J.—The plaintiffs in three separate actions sued to recover the balances due on three promissory notes. The actions were consolidated. A separate set of findings was made in each action and a separate judgment was entered. From each judgment the defendant has appealed.

The controversy arose out of the following facts:

Carrie M. Botts, deceased, the maker of the three promissory notes upon which these actions were instituted, was the wife of James M. Botts, who died in March, 1934. By his will James M. Botts appointed R. Stanley Dollar his executor, left nothing to his wife Carrie M. Botts, except her community interest, and left legacies of 20% of the capital stock of the American Marine Paint Company to John Parker; $20,000 to R. Stanley Dollar, and bequeathed the balance of his estate to his brothers and sisters.

R. Stanley Dollar, as the executor of the last will and testament of James M. Botts, appointed Keith R. Ferguson as his attorney, and informed him that he would not sign any petitions or approve any claims unless such petitions and claims were approved in writing by the widow, Carrie M. Botts. Mrs. Botts desired to obtain full control of the American Marine Paint Company, and for that reason she

wanted to pay all claims against the estate and obtain assignments for them. She wanted the title to all the stock, and to have no claims against it. Having made arrangements for the assignment of all three claims, on July 2, 1934, Mrs. Botts executed the three notes payable to R. Stanley Dollar and J. Harold Dollar, each in the sum of $12,000, and a note to H. M. Lorber, in the sum of $5200. Each of the notes being payable within one year, Mrs. Botts commenced the payment of the notes by monthly installments on August 2, 1934, of $205 each on the R. Stanley and J. Harold Dollar notes, and $90 on the H. M. Lorber note, and made such payments each month thereafter to and including January 2, 1938, a period of three and one-half years, her death occurring on January 20, 1938.

In August, 1934, the first inventory was filed, listing the assets of the estate of James M. Botts, which were appraised at $1969.92.

The matter of drawing up the claims of the plaintiffs against the James M. Botts estate was placed in the hands of Keith R. Ferguson, who was delayed in preparing the claims by reason of certain legal work so that the claims were not prepared until October 16, 1934. The claims were presented to Theodore M. Levy, associated with Ira S. Lillick of the San Francisco bar, who were acting as the attorneys for Mrs. Botts. They obtained the approval of Mrs. Botts to the claims, and then returned them to Mr. Ferguson, who presented them to Mr. Dollar for his approval. The endorsement of approval of Mrs. Botts appears on the bottom of each of the three claims.

After the claims had been approved and verified, they were filed with the court. Thereafter, assignments of each of the claims were prepared by Mrs. Botts' attorneys, signed by each of the plaintiffs and presented to Mr. Levy, attorney for Mrs. Botts, and were thereafter filed.

After the filing of the first inventory there arose a serious question as to whether the 1749 shares of American Marine Paint Company stock, which were not listed in the first inventory, were community property or the separate property of Mrs. Botts as a surviving joint tenant of her deceased husband, James M. Botts. Mr. Schafer, an attorney representing some of the heirs of James M. Botts, made the con-

tention that there was no joint tenancy, and to settle this matter Mrs. Botts thereafter made a settlement with Mr. Schafer, through her attorney Theodore M. Levy, and took an assignment of all the rights of the heirs under the will.

The 1749 shares of stock not having been listed in the original inventory, an amended inventory which included the 1749 shares of the American Marine Paint Company stock, listing them as community property, was filed at the suggestion and advice of Mr. Levy as the attorney for Mrs. Botts and Mr. Homer H. Tooley, the defendant in this case, who was at that time employed as a tax accountant for the estate of James M. Botts.

The assets of the estate of James M. Botts, as shown by the amended inventory, were appraised at $206,509.18.

On July 23, 1936, the first and final account and petition for distribution in the estate of James M. Botts was placed in the hands of Mrs. Botts' attorney, who obtained the written approval of Mrs. Botts on said account reading "Approved (Signed) Carrie M. Botts"; and the account was thereupon filed in the court.

The property of the estate was distributed as decreed and the executor discharged and no appeal having been taken from said decree at the time of the trial it had become final.

Carrie M. Botts died on January 20, 1938, and by her will named Homer H. Tooley, the defendant herein, as her executor. These three actions were brought after plaintiffs' claims on the notes were rejected by the defendant Homer H. Tooley as executor.

At no time from the date of execution of the notes until her death in 1938 did Carrie M. Botts object to these notes or question their validity, but, on the other hand, she paid monthly the sum of $500 on account of the principal and interest on all of the notes, $205 being paid on each of the notes of R. Stanley Dollar and J. Harold Dollar and $90 on the H. M. Lorber note. There was no charge or proof of fraud, undue influence or misrepresentation, the defendant presenting only one defense on this appeal, that is, want and failure of consideration for the notes.

In making the contention just stated the defendant asserts (1) the alleged claim of each payee was barred by the statute

of limitations; (2) the account which was the subject of each claim was not attached to the claim filed in estate of James M. Botts, deceased; (3) the acts constituting an approval did not precede but followed the act of delivering the notes; and (4) the claims of the payees against the estate of James M. Botts were invalid on their face.

No one of the foregoing contentions has any merit. Each one is based on the face of a certain written instrument. Each of said instruments presumably came before the probate court and the legal effect of said instrument was actually and necessarily determined by that court in framing its decree settling the final account and framing the decree of distribution in the administration of the estate of James M. Botts, deceased. No irregularity appears on the face of the decree. That decree was rendered and had become final when the instant actions were commenced. It was not subject to the attacks of this defendant. (*Estate of McDougald*, 146 Cal. 191, 195 [79 Pac. 878].) Each of the above attacks which the defendant makes is obviously an attempt to show that the decree of the probate court was, as to the parts so attacked, erroneous and invalid. The ruling of the trial court that the decree was *res judicata* was clearly correct.

The defendant also contends that the assignments to Mrs. Botts by the payees of the claims which they had filed in the probate proceedings in the matter of the estate of her deceased husband were not a good and valuable consideration to support such contracts. We find no merit in that contention. When Mrs. Botts delivered her note it is not claimed any fraudulent word was said or any fraudulent act was done by the payee. The delivery of said note was the consideration moving from her. At the same time the payee delivered to her an assignment in due form of his claim against the estate of J. M. Botts, deceased. That was the consideration moving from the payee to Mrs. Botts. Those two acts constituted the contract. (*Newcomb* v. *Newcomb*, 239 Ill. App. 256; *Seth* v. *Lew Hing*, 125 Cal. App. 729 [14 Pac. (2d) 537, 15 Pac. (2d) 190].) In the absence of a charge of fraud the value of the note or the value of the assignment is immaterial. (*Newcomb* v. *Newcomb, supra*.)

The law will not attempt to measure the value of either. (*Seth* v. *Lew Hing, supra.*)

 The defendant claims that the joint tenancy stock upon the death of Mr. Botts became the property of Mrs. Botts, that later it was "dumped" into the estate of the former, that the probate court never had any jurisdiction over it, and that said decree did not, and could not, affect the title thereto. The making of that claim is to present a false issue. If this were a proceeding brought under Probate Code, sections 579, 580, such questions brought arise. But it is not such a proceeding. It does not involve the title nor the history of the title to any shares of stock. The rights and obligations under three promissory notes are the sole questions involved.

 The defendant concedes that if Mrs. Botts was estopped by her conduct that this defendant is estopped, but the defendant asserts no estoppel was created. (10 Cal. Jur. 626, 638, 639.) An examination of that text discloses that it contains nothing supporting the defendant's assertion. That an estoppel was created, it is sufficient merely to cite *Davis* v. *Wakelee*, 156 U. S. 680 [15 Sup. Ct. 555, 39 L. Ed. 578], and *Bixby* v. *Security-First Nat. Bank*, 7 Cal. (2d) 424 [60 Pac. (2d) 862], and Code Civ. Proc., sec. 1963, subd. 3.

The judgments appealed from are affirmed.

Nourse, P. J., and Dooling, J. *pro tem.*, concurred.