[Civ. No. 11927. First Dist., Div. One. July 24, 1942.]

AMERICAN MARINE PAINT COMPANY (a Corporation), Respondent, v. HOMER H. TOOLEY, as Executor, etc., Appellant.

Byron Coleman, Abraham Setzer, Carl E. Day and Robert E. Hatch for Appellant.

Lillick, Geary, Olson & Charles, Ira S. Lillick and Kent A. Sawyer for Respondent.

WARD, J.—A rehearing was granted in this case solely because counsel urged in their petition that the cause of action sounded basically in equity and that this court, therefore, had no jurisdiction of the appeal. The appeal has since been transferred to the Supreme Court and retransferred by that court to this court. We are satisfied that our former disposition of this case was correct, and for that reason adopt as the opinion of this court the former opinion in the case, which is as follows:

"Appeal by defendant, as executor of the estate of

Carrie M. Botts, from a judgment awarding plaintiff the sum of $36,108.27, and decreeing that such shares of the stock of plaintiff corporation as have come into the hands of the executor are, by reason of a contract, subject to plaintiff's right to require the transfer to it of an amount thereof of sufficient value to cover an indebtedness in the above sum, or a pledge thereof to secure the same.

"Several cases involving in some respects the background of the present action have been heard on appeal. (*Dollar* v. *Tooley,* 46 Cal. App. (2d) 832 [117 P. (2d) 39]; *Lorber* v. *Tooley,* 47 Cal. App. (2d) 47 [117 P. (2d) 421]; *Tooley* v. *Parker,* 51 Cal. App. (2d) 542 [125 P. (2d) 66].) The present action is one wherein there appears to be no particular dispute as to the facts.

"The plaintiff corporation was formed in 1903 by James M. Botts and his wife Carrie M. Botts. They managed the corporation and held practically all of its stock. Many years prior to the death in 1934 of Mr. Botts he made a will, in which he bequeathed to his wife, her community interest in his estate; to John Parker, an employee of plaintiff corporation for many years, and at the time its manager, he bequeathed 20 per cent of the stock of the company standing in Mr. Botts' name at the date of his death, and to R. Stanley Dollar the sum of $20,000. The residue of the estate was by said will given to his brothers and sisters. Mr. Dollar was named executor of the estate. However, several months prior to the death of Mr. Botts he and his wife placed in joint tenancy all their stock individually owned. At the time of his death Mr. Botts was rather involved financially — the assets of his estate exclusive of any stock in plaintiff corporation being appraised at only $1,969.92 (*Dollar* v. *Tooley, supra*), and while ordinarily the stock which stood in his name prior to its change to ownership in joint tenancy would have passed to the survivor, it was, with Mrs. Botts' consent, included in his estate and probated therein.

"During the lifetime of Mr. Botts, both he and his wife carried separate accounts with plaintiff, against which the latter charged advances made and credited dividends paid on the stock, etc. The account of Mr. Botts at the time of his death showed an indebtedness to the company of $15,163.49; and the account of Mrs. Botts a net indebtedness of $5,425.

"Following the death of Mr. Botts, a question arose as to whether stock in plaintiff corporation was owned by him and his wife as community property or in joint tenancy. If held in joint tenancy it constituted no part of his estate, which would then have been insufficient to meet his obligations. In this situation there would undoubtedly have been an attack by the creditors of Mr. Botts' estate upon the joint tenancy arrangement involving stock valued at in excess of $200,000 standing in Mr. Botts' name a little more than six months before his death. If held as community property, a large part of it would have to be sold for the benefit of his creditors. Mrs. Botts indicated her desire to pay off the obligations of her deceased husband, and particularly wished to retain control of the corporation. To this end, as stated, the stock standing on its books in the name of Mr. Botts was included as an asset of his estate. Mrs. Botts gave certain creditors of her husband her personal notes and received from them assignments of their claims against his estate. She arranged with plaintiff to advance a sufficient amount to take care of the indebtedness of other creditors, expenses of probate, the payment of the above two legacies, together with inheritance taxes thereon, etc. It is conceded that Mrs. Botts understood she might not be legally liable for such debts and expenses. Subsequent to Mr. Botts' death and up to July 30, 1934, the plaintiff advanced the sum of $2,970 in order to meet certain of his obligations. On that date the company and Mrs. Botts entered into a written agreement whereby in consideration of the advances already made and others to be later made, she agreed, at the option of the company, to transfer or pledge to it stock in value equal to the amount of such indebtedness. Thereafter the company continued to make advances to Mrs. Botts, part of which she used for the payment of her husband's debts. The company also directly paid some of his creditors, as well as the expenses of administration of the estate, the legacies, and the inheritance taxes on the two legacies, which would ordinarily have been payable by the legatees, taking assignments from such creditors or legatees.

"The amount of $15,163.49 owing plaintiff by Mr. Botts at the time of his death had been made the subject of a creditor's claim against his estate. Mrs. Botts requested the approval of this claim and it was subsequently discharged by plaintiff's entry of satisfaction thereof in the probate pro-

ceedings. This amount as well as advances above enumerated were carried on the books of the company against Mr. Botts' account, which was kept open. A month prior to the death of Mrs. Botts in 1938 the amounts advanced Mr. Botts during his lifetime as well as the later advances were transferred to the account of Mrs. Botts. At the time of her death, the account showed an indebtedness of $104,315.77, representing advances to both Mr. and Mrs. Botts before and subsequent to Mr. Botts' death, less a credit to Mrs. Botts of $68,207.50, leaving due the sum of $36,108.27, for which plaintiff filed a claim against Mrs. Botts' estate. The claim was rejected, and plaintiff brought the present action and recovered judgment for the full amount thereof.

"It might be well to mention at this point that the plaintiff carried life insurance on Mr. Botts to insure itself against business losses which might result from his death. Such insurance was originally carried by Mr. Botts for others, and he had obtained loans against it; the premiums were about $5,000 a year and he had decided to lapse the policies. Plaintiff, with Mr. Botts' consent and that of the beneficiaries, kept the policies in force.

"Appellant contends that the insurance was 'more than ample to repay the company everything which it had advanced to him [Mr. Botts] or advanced to other creditors of his after his death'; also that by the contract of 1934 between Mrs. Botts and plaintiff, the former 'agreed to pay the company only her own indebtedness and this was more than cancelled by credits.'

"There is no claim that legally the company was bound to satisfy Mr. Botts' indebtedness from the proceeds of the insurance policies. And the agreement of 1934, providing for the assignment or pledge of stock of a sufficient value to satisfy 'the amount of the indebtedness of the first party [Mrs. Botts]', specifically mentioned the amount due the company by Mr. Botts at the date of his death as well as the amount due by Mrs. Botts at the time of the agreement, the sum advanced by the company prior to the date thereof in payment of some of Mr. Botts' debts and 'further advances' that 'may be made by the second party [the corporation] for the first party's [Mrs. Botts'] use and in connection with the administration of the estate of said J. M. Botts and with the payment and settlement of claims against said J. M. Botts and his estate and otherwise.'

"Appellant further contends that the judgment was excessive in the sum of $22,159.92, made up of the amount advanced Mr. Botts prior to his death, $15,163.49; the sum of $2,970 paid creditors immediately following his death, and the inheritance tax on the two legacies, amounting to $4,026.43. These items are directly or indirectly a part of the indebtedness assumed by Mrs. Botts under the agreement of 1934. The corporation suffered an immediate detriment by satisfying a claim which it was still carrying on its books, and by the payment of amounts to Mr. Botts' creditors. Mrs. Botts, for herself and her assignors, including the brothers and sisters of Mr. Botts, received the benefit of an orderly settlement of Mr. Botts' estate without unnecessary sacrifice, and the ultimate distribution thereof to her. Relative to the assumption by her of the payment of inheritance taxes on the Parker and Dollar legacies, if her settlement with them included the payment of such taxes, as the record indicates, there is nothing inequitable about the claim of respondent for the sums advanced by it for this purpose.

"Appellant urges that under the parol evidence rule the written instrument must be considered as containing all the terms of the agreement of the parties. In the present case it was necessary to determine whether prior debts and those incurred subsequent to the date of the contract were in fact debts of Mrs. Botts. Accordingly the circumstances under which the parties contracted were material to a determination of that issue. (Code Civ. Proc., § 1860; Civ. Code, § 1647; *Weinstein* v. *Moers,* 207 Cal. 534 [279 Pac. 444]; *Balfour* v. *Fresno Canal & Irr. Co.,* 109 Cal. 221 [41 Pac. 876]; *Raisch* v. *County of Monterey,* 140 Cal. App. 627 [35 P. (2d) 587]; *People* v. *Ganahl Lumber Co.,* 10 Cal. (2d) 501 [75 P. (2d) 1067].)

"The real problem in this case is whether respondent is entitled to a money judgment for the amount due or is limited in the matter of repayment as specified to the options as provided in the agreement. The agreement provides: 'At any time or times required by the second party the first party shall, at the option of the second party, *either:* (a) Endorse, transfer and deliver to the second party a number of shares of the capital stock of the second party, the aggregate value of which, at the value thereof to be fixed by the Inheritance Tax Department of the State of California for inheritance tax purposes, shall be the amount of the indebtedness of the

first party to the second party at the time of the exercise of said option, less any then existing balance of the above mentioned credit to the first party of $9,225.00.' The credit of $9,225 to the account of Mrs. Botts at the time of the agreement [she had, as stated, a net indebtedness of $5,425], had increased, at the time of the trial of the present action, to more than $68,000. The agreement continued: '*or* (b) Make, execute and deliver to the second party her promissory note or notes in a sum or sums which shall be equal to the amount of the indebtedness of the first party to the second party at the time of the exercise of said option, less any then existing balance of said credit of $9,225 and make, execute and deliver to the second party as security for said note or notes, a pledge or collateral security agreement or agreements pledging a number of shares of the capital stock of the second party the aggregate value of which, at the value thereof to be fixed by the Inheritance Tax Department of the State of California for inheritance tax purposes, shall equal the amount or amounts of said note or notes and endorse and deliver said shares of stock to the second party pursuant to said pledge or collateral security agreement or agreements and as security for the payment of said note or notes.'

The agreement further provides that any promissory note or notes given under the agreement shall be demand notes, without interest, and that there shall be no right to a deficiency judgment in the event the pledged stock shall not yield the amount of the note or notes for which it is given as security. Mrs. Botts was given the right to reduce, by the payment of cash, any indebtedness 'which shall not theretofore have been the subject of the exercise of option (a) or option (b).' The agreement includes the following provisions: 'If for any reason it shall be unlawful for the second party to have said stock endorsed and transferred to it by the first party or pledged to it by the first party or acquired by it pursuant to foreclosure of such pledge, or if the first party shall not at any time have a sufficient amount of said stock to accomplish the terms and conditions of this agreement, nothing herein contained shall be construed as constituting a waiver of any portion of the indebtedness of the first party to the second party or as preventing the second party from exercising any other remedy for the collection of any such indebtedness or any part thereof.'

It is the theory of respondent that the agreement should be construed as giving the corporation a correlative right to sue for cash; that there is nothing in the agreement that expressly abridges the right to secure a money judgment, and that the provision for options is merely collateral or additional security; that the exercise by the corporation of such provisions of the agreement should not destroy the remedy that respondent would otherwise have to secure a money judgment. In brief, that the paragraph last quoted from the agreement was intended to make certain that a remedy by money judgment would be available. In support of this theory, respondent cites cases from California and other jurisdictions 'that the acceptance of a note for a debt does not discharge the debt unless expressly agreed to be payment.' (*Comptoir D'Escompte* v. *Dresbach,* 78 Cal. 15, 20 [20 Pac. 28]; *Van Vliet* v. *Jones,* 20 (N. J.) L. 340 [43 Am. Dec. 633]; *Henry* v. *Nubert* (Tenn.), 35 S. W. 444; *Stucker* v. *Shumaker,* 290 Pa. 348 [139 Atl. 114]; *Bonestell* v. *Bowie,* 128 Cal. 511 [61 Pac. 78]; *Selig Cahn, Inc.* v. *California Wrecking Co.,* 9 Cal. (2d) 617 [71 P. (2d) 1113].) By analogy respondent argues that 'If a promissory note containing an express agreement to pay a preexisting indebtedness does not merge such indebtedness, we are at a loss to see how it can be held that an agreement reciting certain obligations and giving the creditor optional methods to secure liquidation or security therefor does so.' ▌ Ordinarily acceptance of a promissory note or a check does not discharge an existing debt, but is, in effect, an agreement designating the manner and method of its payment, including the suspension of the debt until the maturity of the note or the presentation of the check for payment, at which time, if unpaid, the debt is revived. (*Selig Cahn, Inc.* v. *California Wrecking Co., supra; Comptoir D'Escompte* v. *Dresbach, supra,* p. 21.) Of course the liability on the note upon nonpayment, and the revived liability on the original indebtedness exist at the same time. ▌ There is no legal rule prohibiting parties from acknowledging by contract that money has been advanced and agreeing that past and future advances be paid in a specified manner, such as the transfer of stock to secure the indebtedness, at a designated time and place or upon demand. The entering into of such a contract in writing supersedes all negotiations which preceded or accompanied its execution (Civ. Code, § 1625), subject to proof in a proper case of the

circumstances under which it was made (Code Civ. Proc., § 1860.) We conclude that there was an indebtedness due the corporation by Mrs. Botts, and that the terms of the agreement provided the method of its payment.

 "Appellant objects to the forms of action adopted by respondent. The complaint is in four counts. Respondent does 'not contend that a money judgment . . . was entered under the count upon the contract.' The ascertainment of the debts required a separately alleged cause of action. Whether the count on the open book account, the one on an account stated, the common count or the count for money advanced at the special instance and request of Mrs. Botts was particularly appropriate, considering the facts, is immaterial if under any or all of them the amount due was ascertainable.

 "The prayer of the complaint was to obtain a judgment for $36,108.27, and that the trial court 'make and enter herein its order and judgment that 308 shares of the capital stock of American Marine Paint Company, a corporation, have come into the hands of the defendant as executor of the last will and testament and of the estate of Carrie M. Botts, deceased, subject to, and impressed with, the right and option of plaintiff to require the endorsement, transfer and delivery of said 308 shares of stock to plaintiff or the pledge and endorsement thereof and the execution of a collateral security agreement as security for the payment of a demand promissory note or notes to be executed by said defendant, as executor, in the sum of $36,108.27.' The record does not disclose that a demurrer was interposed to the complaint. Under such circumstances, in the absence of a claim of lack of an essential allegation, on appeal the pleadings should be liberally construed in aid of the judgment. (*Barnaby* v. *Barnaby,* 100 Cal. App. 195 [279 Pac. 1064]; *Ohio Electric Car Co.* v. *Le Sage,* 182 Cal. 450 [188 Pac. 982]; *Garrison* v. *Hogan,* 112 Cal. App. 525 [297 Pac. 87]; *Jones* v. *Re-Mine Oil Co.,* 47 Cal. App. (2d) 832 [119 P. (2d) 219].) **[5b]** Appellant states that the action is for specific performance and that the requirements for such action are not alleged. The contention might have been addressed to the trial court on demurrer, but need not be considered on this appeal.

 "The amount was fixed. The construction to be placed upon the terms of the contract is the only question remaining. The reasonable construction is that the corporation did not waive any portion of the indebtedness if for any reason it should

be unlawful to endorse and transfer or pledge the stock, or if in the event of the exercise of the option Mrs. Botts at any time should not have stock of sufficient value to accomplish the terms and conditions of the agreement, but that otherwise, as the first step to secure payment of the indebtedness, respondent is bound, by the terms of the agreement, to exercise the option.

"The judgment, however, is erroneous. By paragraph one a money judgment against the estate of Carrie M. Botts in the sum of $36,108.27 is granted plaintiff. That portion of the judgment reads as follows: '. . . do have and recover judgment against defendant Homer H. Tooley, as executor of the last will and testament of Carrie M. Botts, in the sum of $36,108.27, together with costs, in favor of plaintiff, American Marine Paint Company, and against said defendant in the amount of $151.70.' By paragraph two of the judgment it is provided: '. . . that such shares of the capital stock of American Marine Paint Company, a corporation, plaintiff herein, as have come into the hands of said defendant, as said executor, are subject to and impressed with the right and option of plaintiff herein to require the endorsement, transfer and delivery thereof, or the pledge or indorsement thereof to pay or secure the indebtedness of said defendant, as such executor, as herein adjudged in the sum of $36,108.27, in the manner provided in that certain contract dated July 30, 1934, entered into by Carrie M. Botts and plaintiff.'

"As we read the above, plaintiff is granted a money judgment with the optional right to satisfy it from the stock owned by the estate of Carrie M. Botts. That is not what the agreement provided. Unless it was unlawful for Mrs. Botts to endorse and transfer or pledge the stock to the plaintiff, it was intended that her indebtedness, or that of her estate, should be satisfied from the stock owned by her, which stock should be valued either at the amount fixed by the Inheritance Tax Appraiser or at $85.00 a share. If she or her estate had unencumbered stock it was never intended, as we read the agreement, that a money judgment except for a deficiency should be secured against her. If she executed a promissory note secured by the stock (which was never done) a deficiency was waived, but otherwise the plaintiff was required to satisfy its claim from the stock, if possible, and only as to the balance, if any, was Mrs. Botts or her estate to be personally liable.

The agreement did not give the plaintiff three options, i. e.,

the right to a money judgment, the right to demand a promissory note secured by the stock, or the right to demand stock as security. The agreement required the plaintiff to exercise one of two options granted to it by the agreement, unless it was unlawful for Mrs. Botts to endorse the stock. In this connection the agreement provides: 'At any time or times required by the second party the first party shall, at the option of the second party, *either* . . .' Reasonably interpreted, in view of the background and obvious intent of the parties, that provision required plaintiff to exercise one of the options before seeking a money judgment. For these reasons it was erroneous to grant a personal judgment against the defendant.''

The judgment is reversed with instructions to the trial court to modify its findings and conclusions as herein indicated, and to enter the limited judgment outlined in this opinion. Both parties are to bear their own costs on this appeal.

Peters, P. J., and Knight, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 21, 1942.