[Civ. No. 19698.   Second Dist., Div. One.   Nov. 24, 1953.]

ARA MELICKIAN, Respondent, v. WILLIAM EDMUND HALSTEAD, JR., as Administrator, etc., Appellant.

Robert E. Ford and Jacob Chaitkin for Appellant.

Allen M. Williams for Respondent.

DORAN, J.—The complaint herein seeks to impose a trust as to an undivided one-half interest in certain real estate, an accounting in relation to income therefrom, the quieting of plaintiff's title, and the sale of the property by a commissioner with an equal division of the proceeds.

It appears that in 1940 Mr. and Mrs. Melickian made the acquaintance of William E. and Essie Halstead, an elderly couple who were operating a restaurant on rented premises in Montrose. The parties became good friends and so remained until the death of Mrs. Halstead (September, 1950), and Mr. Halstead (August, 1951). From time to time various favors were rendered the Halsteads by the Melickians; on two occasions money was given to the Halsteads, $125 at one time, and $100 on another occasion, payment of which was never requested or made. The defendant conceded that Melickian "had done a great deal for my family."

The record discloses that beginning in 1943 Mr. Melickian frequently suggested that it would be prudent for the Halsteads to purchase the restaurant property, and in that connection said: "Well, Ed (Halstead), if you ever do decide to buy it and want me to go in with you as a partner, you just let me know—this property is well worth what they will sell it for." In May of 1946 Mr. Halstead informed plaintiff that the property was for sale and that the real estate broker would give Halstead the first chance to buy it, and said: "I remember, Ara, what you had told me and as it's our livelihood, if you still meant what you said, I'd like to go in with you as a partner." To this, Mr. Melickian replied: "I told you I would and I will. You go ahead and attend to the details."

Halstead had only $500 and Melickian wrote out a check for $2,100 to make the necessary down payment. At that time it was planned to buy the property in the names of Halstead, Melickian, and their wives. A few days later Mr. Halstead stated that "he didn't want Mr. Boyer (the seller's agent) to know that we were purchasing it with him"; that the title would be taken in the Halsteads' name alone; that a second trust deed would be given Melickian, "and that later, after the escrow had been closed, that he would settle the details and the partnership." All negotiations were handled by Halstead and Ara Melickian did not question the arrangement,—"I had absolute confidence in him." The record discloses various items of evidence tending to prove that the parties all recognized plaintiff's undivided interest in the property purchased, and that the documents executed did not represent the true situation. On one occasion Mrs. Halstead mentioned that "we ought to straighten out the partnership before we go too long," to which plaintiff responded: "Any time you are ready, we will." And in 1949, Halstead and Melickian discussed the fact that "the partnership assignment" of the property should be made. On still another occasion Melickian said to Halstead: "don't worry about me, because the property (a one-half interest) after you are gone is all I want." There were also statements by Halstead to other persons to the effect that Melickian owned an interest in the property.

In reference to the promissory note and trust deed in favor of plaintiff, the record contains evidence in support of respondent's statement that "Throughout the entire period the parties ignored the existence of the note. No demand was ever made by Melickian for payment of principal or interest, nor was a penny ever paid thereon." The appellant's brief apparently places much reliance upon the existence of this note and trust deed.

The trial court rendered a decision in favor of the plaintiff, finding that "there existed between plaintiff Ara Melickian and said William Edmund Halstead and Essie W. Halstead a close, personal friendship, cooperative business relationship, and generally a relationship of mutual trust and confidence." The court found that Melickian had parted with the $2,100 upon the understanding and oral agreement that a half interest in the property would belong to plaintiff; that such obligation was never repudiated by the Halsteads; and that

the note and trust deed were intended to and did ''comprise evidence only as to the contribution by Melickian.''

The judgment declared that defendant administrator ''holds title as trustee for plaintiff Ara Melickian to the extent of an undivided one-half interest with respect to this certain parcel of real property.'' The property was therefore ordered sold by a commissioner, the net proceeds to be divided between the parties. The defendant was ordered to account to plaintiff for one-half of all income.

Appellant's contention that the findings, conclusions and judgment of the trial court are not warranted by the evidence is without merit. As hereinbefore indicated, a review of the record discloses substantial evidence in support of the findings. The trial court was presented with questions of fact concerning the relations and intentions of the parties as shown by surrounding circumstances, including the conduct and words of those interested. Since the conclusions reached are thus supported, the well-established rule prevents further appellate review of such questions of fact. Under these circumstances a reviewing court is without power to substitute its deductions for those of the trial court.

As stated in respondent's brief, the facts herein, while not identical, ''are similar to the facts in the case of *Steinberger* v. *Steinberger*, 60 Cal.App.2d 116 [140 P.2d 31] : a confidential relationship in fact, the acquisition of real property upon a promise to reconvey, death of the promisor without request for conveyance or conveyance being made, and the refusal of the administrator to recognize plaintiff's interest in the property. . . . In the Steinberger case as well as in the instant case the constructive trust did not arise until the transferee died.''

The appellant's other contentions are likewise untenable. Plaintiff is not seeking and has not been granted ''dual relief,''—payment of the note and a one-half interest in the property. ▆ In reference to the statute of frauds, it may be said that if such a defense could prevail in a case of this nature, then no trust could ever be established if its provisions were contrary to the terms of a writing. Such a doctrine, which would do away with resulting and constructive trusts, is not the law. Nor does the so-called ''dead man's statute'' prohibit receiving testimony of the oral statements of plaintiff and decedent in an action to establish a trust. (*Humes* v. *Humes*, 56 Cal.App.2d 126 [133 P.2d 39].)

Plaintiff's failure to deny execution or validity of the note and trust deed, set up as a defense in the answer, mentioned

by appellant, in no way changes the situation here existing. There is no claim that the instruments were forgeries or that they were not duly executed. However, as shown by substantial evidence supporting the trial court's finding, such documents did not truly represent the transaction. As has been often said, "The law looks to the substance rather than the form of a transaction."

It is said in the trial court's memorandum opinion, "Defendant appears to urge that the recognition of plaintiff's right to a constructive trust would be inequitable. The equities of the case are, however, in my opinion, entirely on the side of the plaintiff." It can hardly be questioned that the record contains evidence justifying the above conclusion on the part of the trial judge. Civil Code, section 2224, is here applicable: "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an involutary trustee of the thing gained, for the benefit of the person who would otherwise have had it." The action was not barred by laches or any statute of limitations.

The judgment is affirmed.

White, P. J., and Drapeau, J., concurred.

A petition for a rehearing was denied December 14, 1953, and appellant's petition for a hearing by the Supreme Court was denied January 20, 1954.