[Civ. No. 21235. Second Dist., Div. One. May 21, 1956.]

RALPH A. JONES, Plaintiff and Appellant, v. CLYDIA A. GORE, Defendant and Appellant.

Thomas W. Hughes for Plaintiff and Appellant.

Henry Grivi for Defendant and Appellant.

FOURT, J.—This is an action to establish a resulting trust in certain real property, and for an accounting. The action for an accounting was abandoned and after a trial before the court without a jury, judgment was rendered decreeing that defendant held the property in question in trust for plaintiff in the following particulars: That plaintiff recover from defendant the sum of $4,000, plus interest, and a trust

lien be impressed upon the property for such amount; that plaintiff recover the further sum of $157.58, plus interest, for taxes paid by plaintiff on the property and a trust lien be impressed thereon for that amount; that such liens are prior to any liens except the first deed of trust and taxes. The judgment further provided for the sale of the property in the event the liens were not paid within 10 days from entry of judgment. Defendant has appealed from the entire judgment and plaintiff has appealed from that portion of the judgment denying him recovery for the amounts advanced by him as monthly installments on the first deed of trust lien.

*Facts*: In September, 1935, plaintiff married Evalyn H. Jones, who had been previously married and by such former marriage had a child, Clydia Gore, the defendant herein. For three and a half years plaintiff and his wife lived in San Francisco and from there they moved to Atascadero, where they bought an unimproved lot. At the time of the purchase title was taken in their names in joint tenancy, with the understanding that it was in fact community property. They built a home on the lot and resided there about three years. In about 1943, plaintiff decided to go to Southern California, and at that time gave his wife a quitclaim deed in her favor to the property. She sold the property in his absence and banked the proceeds as community property. In 1947, plaintiff and his wife, with their community funds, bought a home in Los Angeles County for $11,500, taking title as joint tenants, and paying all but $2,000 from their savings. In this transaction defendant, the adult married daughter of plaintiff's wife, lent her mother and plaintiff $2,000, evidenced by an unsecured note, and the amount was repaid to her.

In 1951, plaintiff and his wife decided to sell their property and, as before, plaintiff executed a quitclaim deed in his wife's favor in order that she could handle the sale. The property was sold for $11,500, and the proceeds were placed by plaintiff's wife in their joint bank account as community property. After this sale, plaintiff and his wife lived in a trailer for some time. About December, 1951, plaintiff's wife was operated on for cancer of the throat and lost her voice. From that time until her death on January 20, 1953, she was unable to talk and used a slate to write on to convey her thoughts.

One Sunday in April, 1952, while plaintiff and his wife were on a drive, she noticed the house involved in this case. She caused plaintiff to stop and wrote on the slate, ''Let's

look at it." A real estate salesman advised them that the owners wanted $15,000 for the property, which they stated was more than they desired to pay. They went in and around the place and talked with the salesman again, who indicated that the owners might sell for $13,900, if the furnishings were a separate transaction. Plaintiff and his wife went back to their place of abode and exchanged views about the property. Mrs. Jones indicated that she was going to have her daughter (defendant) look at the place and ascertain what she thought of it. Mr. and Mrs. Jones conferred about the price of $13,900. Mrs. Jones later advised plaintiff that she had agreed to buy at that price and that they would have to assume a first mortgage already on the property. She also stated that she did not want to deplete their bank account and that her daughter had offered to loan them $2,000. Plaintiff and his wife conferred about the financing of the purchase, as $6,000 was required as a down payment. It was contemplated and talked of that $4,000 could be taken from their savings and the balance of $2,000 could be secured from defendant as a loan. At that time it was agreed that the property was to be in joint tenancy ownership of plaintiff and his wife.

Within a day or so after plaintiff delivered a $4,000 cashier's check to his wife for the property she inquired of him whether he would have any objection to her and her daughter taking title as joint tenants. Plaintiff stated, in substance, that he had no objection if he were protected. Mrs. Jones wrote on her slate, in essence, that he would be protected by either a mortgage or a trust deed.

Plaintiff and his wife moved into the house before the close of the escrow. The day before the closing of the escrow defendant asked plaintiff if the arrangement with reference to the title was agreeable to him and he replied that it was satisfactory provided he was protected. During the escrow period, Mrs. Jones brought plaintiff a deed and asked him to sign it, which he did. At the time, she explained by writing on the slate that this was a formality as the husbands of women were required to sign to close the escrow. She further wrote, in essence, that he was not to worry, that he would be fully protected—that it was just a form. After the escrow was closed, plaintiff's wife wrote several times that he would be protected and that everything was cared for. Plaintiff had complete confidence in his wife during the entire marriage.

During the period of occupancy of the property plaintiff paid 10 installments of $64 each on the first encumbrance, and taxes of $157.58 on the property.

In February, 1953, after the death of plaintiff's wife, plaintiff discussed with defendant the sale of the property, at which time she was agreeable to selling it for $15,000. The sale at that price did not materialize. Plaintiff then suggested selling for $13,900, and defendant refused, stating that if they waited until September the market would pick up and there would be no difficulty in selling it. The day following his wife's death, plaintiff found a holographic will of hers, dated December 10, 1952, in which she directed that her husband was to have her interest in the property.

Plaintiff remained in the house until about the end of March, 1953, at which time defendant took out most of the furniture, stating that the decedent wanted her to have it.

On October 6, 1953, plaintiff instituted the instant action, first to impress a trust on the property for a 40/139 interest therein, and for an accounting, and secondly under a common count for money received in the sum of $4,797.58. At the time of trial plaintiff was about 73 years of age.

Defendant denied that plaintiff had any interest in the property and alleged that it was purchased by Evalyn H. Jones and defendant as joint tenants and that the interest of each of them was as their sole and separate property.

### Defendant's Appeal

Defendant contends that (1) the complaint failed to state a cause of action to establish a resulting trust and that it did not allege facts sufficient to constitute a cause of action for fraud; (2) there was no clear and convincing evidence to establish a trust and no evidence introduced to prove any fraud; (3) that the alleged agreement not being in writing, the cause of action is barred by the provisions of section 1971 of the Code of Civil Procedure and section 2922 of the Civil Code, and (4) that the estate of Evalyn H. Jones was a necessary party.

There is no merit in these contentions. Defendant did not demur to the complaint. ▮ Although the objection that a complaint does not state a cause of action may be raised for the first time on appeal, in the absence of a demurrer and after judgment, the complaint must be construed most favorably to respondent's case and all legitimate inferences from the facts alleged must be drawn in favor of the re-

spondent. (*Parrott* v. *Bank of America,* 97 Cal.App.2d 14, 22 [217 P.2d 89, 35 A.L.R.2d 263]; *American Marine Paint Co.* v. *Tooley,* 53 Cal.App.2d 530, 539 [127 P.2d 960]; *Newmire* v. *Chapman,* 18 Cal.App.2d 360, 362 [64 P.2d 734].)

It is alleged in the complaint that plaintiff, his wife, Evalyn H. Jones, and defendant orally entered into an agreement to purchase certain described property for the sum of $13,900, the sum of $6,000 to be paid down in cash and the balance of the purchase price to be paid by a loan secured by a first trust deed; that said parties agreed that plaintiff should contribute $4,000 and defendant should contribute $2,000 in cash for the down payment; that it was further agreed that title to the property should be taken in the names of Evalyn H. Jones and defendant, Clydia A. Gore, as joint tenants and that plaintiff should be given a second mortgage or trust deed upon the property executed by said Evalyn H. Jones and Clydia A. Gore in the amount of his contribution, as security, and that plaintiff should own an interest in said property in proportion to his contribution, and that said Evalyn H. Jones and Clydia A. Gore should own as joint tenants an interest in proportion to their contribution; that plaintiff and defendant did contribute and pay said sums of money and did purchase said property and a deed was taken in the name of Evalyn H. Jones and Clydia A. Gore as joint tenants; that the second mortgage or deed of trust was never recorded or delivered to plaintiff; that upon the death of Evalyn H. Jones on January 20, 1953, defendant became and was the record owner of the property as the surviving joint tenant; that defendant now claims to own the whole of said property and denies that plaintiff has any interest therein.

Section 853 of the Civil Code provides: "When a transfer of real property is made to one person, and the consideration therefor is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made."

▮ Where there is no written contract, and a party sues to impress a purchase price resulting trust upon real property, the suit is on the presumption found in section 853 of the Civil Code, and not upon the oral contract or antecedent oral negotiations. (*Juranek* v. *Juranek,* 29 Cal.App.2d 276, 280 [84 P.2d 195].) ▮ "A resulting trust is implied from the facts, and neither written evidence of an agreement nor a fraud on the part of an alleged trustee is essential to its existence. ▮ It arises where title of a property is vested

in the trustee while the consideration therefor is paid by the beneficiary.'' (*Bradley* v. *Duty*, 73 Cal.App.2d 522, 526 [166 P.2d 914].)

■ The complaint does not purport to state a cause of action for fraud. Plaintiff has brought his action to establish a resulting trust and while the complaint may not be a model pleading, viewed as a whole, the allegations contained therein are sufficient to state a cause of action for the relief sought. (*Pavlovich* v. *Pavlovich*, 22 Cal.App. 500, 504 [135 P. 303].)

In contending that there was no clear and convincing evidence to establish a trust, defendant urges that plaintiff's testimony was inadmissible because it violated the parol evidence rule and further that even if it were admissible, it should be given no weight because it was the uncorroborated testimony of a party in interest. These contentions are without merit. ■■ Parol evidence is admissible to prove the existence of a resulting trust (*Nishi* v. *Downing*, 21 Cal.App. 2d 1, 3 [67 P.2d 1057]), and where a resulting trust exists the statute of frauds has no application. (*Walton* v. *Karnes*, 67 Cal. 255, 256 [76 P. 676].) As stated in *Melickian* v. *Halstead*, 121 Cal.App.2d 469, at page 472 [263 P.2d 652] : ''In reference to the statute of frauds, it may be said that if such a defense could prevail in a case of this nature, then no trust could ever be established if its provisions were contrary to the terms of a writing. Such a doctrine, which would do away with resulting and constructive trusts, is not the law. Nor does the so-called 'dead man's statute' prohibit receiving testimony of the oral statements of plaintiff and decedent in an action to establish a trust. (*Humes* v. *Humes*, 56 Cal.App.2d 126 [133 P.2d 39].)''

■ ''Whether the evidence to prove the existence of the trust is clear, satisfactory and convincing 'is primarily a question for the trial court to determine, and if there is substantial evidence to support its conclusion, the determination is not open to review on appeal.' (Citing cases.) Likewise, in such cases the credibility and weight of the evidence are exclusively for the trial court. (Citing cases.)'' (*Viner* v. *Untrecht*, 26 Cal.2d 261, 267 [158 P.2d 3] ; *Rowland* v. *Clark*, 91 Cal.App.2d 880, 882-883 [206 P.2d 59].)

■ With respect to defendant's final contention, the estate of Evalyn H. Jones was neither a necessary nor a proper party to the action, since the legal title to the property vested in

defendant upon the death of Evalyn H. Jones and her estate had no interest in it.

## PLAINTIFF'S APPEAL

In paragraph VIII of his complaint plaintiff alleged that from the date of the purchase of the property in May, 1952, he paid out and advanced for the benefit and use of defendant 10 monthly payments of $64 upon the first deed of trust. In her answer defendant admitted that the payments were made, alleging that they were in lieu of rent. The court found that all the allegations in paragraph VIII were true and correct.

There was no agreement to pay rent and no arrangements were made therefor and none was requested. The trial court having found that plaintiff was entitled to a trust lien upon the property, such lien relates back to the time it was created by the conduct of the parties. (*Hise* v. *Superior Court,* 21 Cal.2d 614, 627 [134 P.2d 748].) Plaintiff, having an interest in the property subject to a lien, had the right to redeem it from such lien and he thereby became subrogated to the rights of the senior lienholder. (Civ. Code, § 2903; *Stein* v. *Simpson,* 37 Cal.2d 79, 83-84 [230 P.2d 816].) Accordingly, plaintiff was entitled to be reimbursed for the 10 installments which he paid, plus interest.

Plaintiff has proposed that this court make findings of fact as hereinafter set forth. Gore has not seen fit to file any opposition thereto.

Pursuant to the provisions of section 956a, Code of Civil Procedure, and rule 23(a) of the Rules on Appeal, the following finding of fact is herewith made:

"The allegations of paragraph VIII of plaintiff's complaint are true and said installments, in addition to said taxes, were paid by plaintiff on the prior first trust deed on said premises, as the owner and holder of a secondary lien on said property and in order to protect and preserve his own said lien thereon."

As a conclusion of law from such finding of fact, the following conclusion of law is made:

"That plaintiff and cross-appellant is entitled to have judgment for and to have a lien therefor impressed upon said real estate and improvements, in the sum of $640.00 for the ten installments of $64.00 each paid by him on the prior first trust deed on said premises to protect and preserve his own lien thereon as aforesaid, with interest at the rate of seven per centum per annum from April 1, 1953, until paid."

The judgment is modified by adding the following paragraph:

3(a). That plaintiff have and recover from defendant, CLYDIA A. GORE, the further sum of $640, with interest thereon from the 1st day of April, 1953, at the rate of 7 per centum (7%) per annum, and a trust lien is hereby impressed upon said real estate and improvements in favor of plaintiff for said further sum of money.

Paragraph 4 of the judgment is modified to read as follows:

That said sum of $4,797.58, with the interest aforesaid, is hereby impressed as a lien upon said property prior to any and all liens of every kind except the first deed of trust upon said property and taxes.

As modified, the judgment is affirmed.

White, P. J., and Doran, J., concurred.